Bank of Louisville v. Young.

THE PRESIDENT AND DIRECTORS OF THE BANK OF LOUISVILLE, Plaintiffs in Error, *v.* JOHN YOUNG, Defendant in Error.

1. *Illegal Banking—Notes.*—A note given to secure a loan made in foreign bank notes by a foreign corporation doing business by its agent in this State, is void, and notes given in renewal of such original note are also void.
2. *Conflict of Laws—Interest.*—A corporation, created by the laws of another State, although forbidden by its charter to take more than six per centum interest, may, upon loans made in this State, charge the rate of interest allowed by our laws. The law of the place where the contract is to be performed will govern the rate of interest. One State will not enforce the usury laws of another State, in respect to contracts made within its own limits.

*Error to St. Louis Court of Common Pleas.*

*Whittelsey*, for plaintiff in error.

I. The first instruction given for the defendant was erroneous, because not warranted by the evidence, nor by the statute. The evidence showed that Campbell, the president of the bank, was on a visit to St. Louis, and made a loan to Conant, and took his note, endorsed by George Pegram. This was the only loan proven ever to have been made in this State by the bank, and Campbell had no office or place of business in this State.

The words of the statute (R. C. 1855, p. 289, § 14) are: " Bonds, &c., given for money lent or advanced by a foreign corporation, situated or located, or which is doing business by its officers or agents, within this State, &c., shall be void." These words evidently require that something more should be shown than one single transaction. It is the "doing business" which is forbidden ; section 11, forbidding any foreign bank from keeping any office of discount, &c., shows this to be the intent of the statute. (See also §§ 7 & 13.) Section 13 makes every day's keeping open an office a distinct offence. (Sackett's Harb. Bk. v. Lewis Co. Bk., 11 Barb. S. C. 213 ; Bates v. State Bk., 2 Ala. 465-75 ; Potter v. Bk. of Ithaca, 5 Hill, 490, S. C. on appeal ; 7 Hill, 530 ; Suy-

dam v. Morris C. & B. Co., 6 Hill, 217; City Bank v. Beach, 1 Blatch. C. C. 425; Pennington v. Townsend, 7 Wend. 276; 25 Wend. 648; Ang. Corp. § 264, 274.)

II. Although the original note may have been void, so that no recovery could have been had upon it, yet the plaintiff could have recovered the value of the thing lent, and a new note having been given, the new consideration supported the new note, and the plaintiff is entitled to recover. Note the different wording of §§ 6 & 14. (Armstrong v. Toler, 11 Wheat. 258; Chit. Cont. 40–1; Barjean v. Walmsley, 2 Strange, 1249; Robinson v. Bland, 2 Burr, 1077, 1080, 1082.) These last two cases cited and approved, Utica Ins. Co. v. Scott, 19 Johns. 1–7; 5 Barb. S. C. 9; 3 Ed. Ch. R. 395.

III. The second instruction was erroneous. The interest taken having been legal by the law of this State, where the contract was made and to be performed, the contract was valid.

*a.* The *lex loci* governs the contract. (Broadhead v. Noyes, 9 Mo. 96; Andrews v. Pond, 13 Pet. 65; De Wolf v. Johnson, 10 Wheat. 367, 383; Sto. Bills, § 148; Sto. Conf. L. §§ 243, 296; Hosford v. Nicols, 1 Paige, 220.)

*b.* The limitation in the charter upon the rate of interest is confined to notes negotiable and payable at the bank. (Charter, § 12.) It may do a general banking business, deal in bills, &c. (§ 2.)

*c.* It was not forbidden by its charter from purchasing notes or making loans in other States, and not being forbidden, it could thus deal and lend. (Ang. Corp. § 273; Blair v. Perpetual Ins. Co. 10 Mo. 559; Bk. of Augusta v. Earle, 13 Pet. 321.)

*d.* The provision in the charter, limiting interest to six per cent., was but prescribing the general statute as the rule for the bank, and did not prevent it from taking for a loan in another State the interest legal by the law of that State. The charter merely required the bank to observe the law. (Bard v. Poole, 2 Kern., N. Y., 595; City Sav. Bk. v. Bidwell, 29 Barb. 325; Knox v. Bank U. S., 26 Miss. 655; 6

Conn. 420; 3 Cow. 684; Bailey v. Murphy, Walk. Ch. 424.) It must be observed that the law of Kentucky does not avoid a contract for usury.

*e.* The violation of its charter by plaintiff cannot be taken advantage of collaterally. (Bk. of Mo. v. Merchants' Bk., 10 Mo. 132; Farmers' Bk. v. Garten, 34 Mo. 119; Fleckner v. Bk. U. S., 8 Wheat. 457.)

*Glover & Sheyley*, for defendant in error.

I. The note sued on in this cause was absolutely null and void. The transaction in its inception was null and void. The loan was made in violation of § 14 of "An act to prevent illegal banking, and the circulation of depreciated paper currency within this State," approved December 8, 1855. (1 R. C. 1855, p. 289, § 14.) A fraud upon a statute is a violation of a statute. (2 Pet. 527, 536.) A foreign corporation of New Jersey doing business in New York contrary to a statute of New York, was held not entitled to recover on the prohibited contract. (7 Wend. 276; 22 Me. 491; 11 Wheat. 258; 3 McLean, 103; 2 Doug. 155; 1 Doug. 401; 14 Mass. 322.)

II. The plaintiff, by the law of its existence, could not take a higher rate of interest than one per cent. for sixty days, including days of grace; and if it did so, the whole contract for interest was made void, and payments thereon might be recovered back by the person paying the same. The bank charter forbids a greater rate of interest than six per cent. per annum. (Laws of Ky.)

We contend that this law of the corporation of the plaintiff in this suit is binding on it in Missouri as well as in Kentucky. It may be that individuals may make any contract in any State which the laws of such State allow. But this is not the case with corporations; they can derive no new powers beyond those granted at home; they are restricted everywhere by the laws of their being. (8 Ohio, 286; 11 Ohio, 489.) In Ang. & Ames on Corporations, 234, it is said in deciding whether a corporation can make a particu-

lar contract, we consider first whether its charter, or some statute binding on it, forbids or permits it. (4 Pet. 152, 168.)

III. As corporations are the mere creatures of the law, and derive all their powers from the laws creating them, it is perfectly just and proper they should be obliged to show their authority for the business they assume. (2 Kent, 299, 5th ed.; 2 Pet. 527; 2 Doug. 259; 3 McLeon, 103, 267.)

A corporation enjoys such special privileges or franchises as the laws give to it, and no other.

IV. The bank being prohibited from charging more than one per cent. for sixty days, including days of grace, and having wilfully violated the law of its charter in that behalf, the whole contract was null and void from the beginning. A corporation can do no valid act which its charter prohibits. (2 Pet. 527.) The violation of charter defeats the action on the note. (1 Hall, N. Y., 480; 5 Conn. 560; 3 Eng. Com. Law, 215; 7 Wend. 276, 34; 7 Mo. 586; 26 Barb. Sup. Ct. 596; 7 N. Y., 3 Selden, 328; 3 Comst., 3 N. Y., 19, 34; 8 Ohio, 286; 4 Wheat. 636; 2 Doug., Mich., 251.)

The charter provided that the bank might take six per cent. and no more; the bank contracted for more; and though no provision of the law declared the note void, it was so held to be. (11 Wheat. 271; 2 Doug., Mich., 254.) It is laid down that though the contract was to be performed in New York, it was to be controlled by the laws of Indiana chartering the bank. (11 Wheat. 271; 11 Ohio, 489.)

It is a good defence to any action by a corporation that the contract is not authorized by its charter. (21 Mo. 92.)

A corporation and an individual do not stand on the same footing in regard to the right of contracting. The latter may make any contract not inconsistent with the interests of society, whilst the former must look to the powers given in the charter. (10 Mo. 565.)

WAGNER, Judge, delivered the opinion of the court.

The record in this case shows that in 1857, one Campbell, who was president of the Bank of Louisville, Kentucky, a

foreign corporation, came into this State as agent of the bank, and brought with him a large amount of foreign bank notes, for the purpose of using the same in buying and selling bills of exchange, checks and drafts, and discounting bills and notes, and loaning the same in this State; and that a large portion of the notes so brought were issued by him and circulated in this State. That H. A. Conant & Co. applied to said Campbell, in the city of St. Louis, for a loan for $5,000, and the loan was made upon the note of Conant & Co., endorsed by George Pegram and the defendant, which note was discounted, and $4,842 paid to Conant & Co., in Kentucky bank notes, then at a discount of one per cent. The loan was made by agreement at ten per cent. per annum, but the rate of interest actually charged, it is contended, was greater. There were various renewals of this note, by bills of exchange and notes, and partial payments made on each renewal, when finally Conant & Co. made a new note for the balance remaining due, endorsed by the defendant alone, before the maturity of which Conant & Co. failed. But, subsequently, renewals were still made, at the request and on the endorsement of defendant; and at last, to close the matter, he took up the note of Conant & Co., and gave his note in its stead, which is the note here sued on. It furthermore appears that the Perpetual Insurance Company of St. Louis was the collecting agent and correspondent of the plaintiff, both prior and subsequent to the loan to Conant & Co. Large quantities of foreign bank paper were deposited with the secretary of the insurance company, who paid it out under instructions from plaintiff, the usual course being to have the paper of applicants for loans passed on at plaintiff's place of business in Kentucky, and then remitted here, with directions to pay out certain specific amounts. But the paper in this case was discounted here, and renewed on divers occasions at the office of the agent.

The charter granted the plaintiff by the Legislature of Kentucky, was set up in defence, by which it is declared, in § 12, "that said bank should not contract for or receive a

greater interest than at the rate of six per cent. per annum, for the loan or forbearance of money; and interest on promissory notes, negotiable and payable at said bank, and there discounted, shall be calculated on the true time such notes have to run, including three days' grace," &c.

The laws of the State of Kentucky were also given in evidence, by which it was provided that all contracts and assurances made directly or indirectly for the loan or forbearance of money, or other things, at a greater rate than legal interest (six per cent.), shall be void for the excess over the legal interest; and in case of banks or corporations, if a greater discount is taken, the whole contract for interest shall be void, and anything paid thereon as interest may be recovered back by the person paying the same, or any creditor of his may recover the same by bill in equity.

At the conclusion of the testimony, plaintiff asked the court to declare the law to be that if the defendant gave the note sued upon, then he had not, in his answer nor by the evidence, presented any defence against the note, and the plaintiff was entitled to recover; which declaration the court refused to give.

The court then, at the request of the defendant, gave the following instructions:

1. If the jury believe from the evidence that the plaintiffs are a corporation of Kentucky, and that, in 1857, plaintiffs, by an agent doing business for them in this State, loaned H. A. Conant & Co. $5,000, more or less, of bank notes issued by plaintiff, or any foreign corporation, and Conant & Co. gave plaintiff their bill or note, endorsed by defendant, for such loan; and if the jury further find that the bill or note originally given has been reduced by payments from time to time, with renewals of the paper and extension of the time thereon, and that the note now sued on is a renewal of the original paper, so given by Conant & Co., and was made to secure a balance of said original loan, the note now sued on is null and void, and the plaintiff cannot recover.

2. If the note sued on was given mediately and remotely

in renewal in part of a loan of $5,000, made by the plaintiff to Horace A. Conant, for which said Conant gave his note with the defendant and another as endorsers; and if, in making said loan, the plaintiff contracted for and received a greater rate of interest than at the rate of six per cent. per annum, then plaintiff cannot recover in this action.

Plaintiff then took a non-suit, and, failing to have the same set aside, brings the case here by writ of error.

The instruction or declaration of law asked by the plaintiff was, we think, rightly refused. It was virtually declaring by the court that there was no evidence adduced by the defendant constituting a defence. This was not warranted by the facts in the case. It is urged in argument that the first instruction given for defendant was not justified by the evidence.

The instruction is predicated on the fact that the plaintiff, in making the contract of loan and the various renewals, had violated the law in regard to illegal banking and the circulation of depreciated paper currency. (R. C. 1855, p. 285.) It is provided by § 14 of the act to prevent illegal banking, that "all bonds, bills or notes, or other instruments of writing, securing the payment of any money or bank notes, loaned or advanced by any foreign corporation or unincorporated banking company, situated or located, or which is doing business by its officers or agents within this State, to such foreign corporation or unincorporated banking company, or execute to any agent, or person holding himself out as agent of such corporation or unincorporated banking company, or to any corporation or person, whether such bond, bill or note, or other instrument of writing, be made payable, or made to secure the payment of such loan of money or bank notes to such foreign corporation or unincorporated banking company, or to the agent thereof, for the use of the same, or such agent, or any other person or corporation, either directly or indirectly, for the use of such foreign corporation or unincorporated banking company, in whatever name or form the same may be drawn, shall be taken and held as utterly void and of no effect."

The obvious intention of the act was to exclude certain associations of persons, foreign corporations, from coming in competition with the authorized banking establishments of this State, and to prevent their circulating depreciated currency. And, with this view, it makes utterly void all bonds, bills or notes, or other instruments of writing, securing the payment of any money or bank notes loaned or advanced by any foreign corporation or unincorporated banking company, situated or located, or which is doing business by its officers or agents, within this State.

A foreign corporation, doing the prohibited business through its agent, comes within the penalty of the law. There was evidence direct that the plaintiff made the loan out of which this suit originated, through its duly authorized and accredited agent for that purpose ; that he brought with him a large amount of depreciated currency, mostly the issue of the plaintiff, and discounted and circulated it in this State. And further, that the note to Conant & Co. was renewed at different times, and the time extended, and payment made thereon, to the other agents of the plaintiff, who were doing business in its behalf in the city of St. Louis after the departure of Campbell. Whether there were facts sufficient to constitute a violation of law, was a question for the jury to find. But it is insisted there is no evidence of more than one transaction of loan by the plaintiff in this State, and that that is insufficient ; but this conclusion is usurping the province of the jury, and rejecting entirely all the evidence in relation to the renewals and payments made with the secretary of the insurance company. It was for the jury to determine, as matter of fact, whether the renewals, extensions of time, and payments, were contracts or transactions made for the purpose of securing the payment of money loaned or advanced by plaintiff, through its agent, and whether so done directly or indirectly is wholly immaterial. If the manner of doing the business was a cunningly devised scheme to evade the statute, the law will neither sanction nor tolerate it. An attempt by indirect and fraudulent means to elude

the provisions of a statute will be construed as a violation of it.

The note in controversy grew immediately out of the original loan to Conant & Co., and, if that was void and illegal, and incapable of enforcement by reason of being in violation of law, the note cannot give the plaintiff any greater or superior right to recover than if suit had been brought on the first loan. No new consideration was given to support and uphold this note, other than was given to sustain the loan to Conant. The case of Armstrong v. Toler (11 Wheat. 253), which entirely harmonizes with a great number of cases, both English and American, is not an authority for the doctrine contended for by plaintiff's counsel. Had Pegram, who was endorser on the first paper with defendant, at defendant's request, paid off the whole amount and received defendant's note for one-half, being his contributory share, it is very evident no defence could have been made to the note by defendant, for it would have been founded on a sufficient consideration within the principle laid down in the books. But such is not this case. We are of the opinion, therefore, that the first instruction enunciated a correct principle of law, and was rightly given.

The next point is whether, if the plaintiff, in making the contract by agreement, received a greater rate of interest than six per cent. per annum, the whole contract is void. It is very true there is a distinction between corporations and natural persons ; whilst the latter may make any contract not prohibited by the law, or inconsistent with the interests of society, the former can exercise no powers except such as are specifically conferred on them by their charters.

The Supreme Court of the United States has said : " The exercise of the corporate franchise, being restrictive of individual rights, cannot be extended beyond the letter and spirit of the act of incorporation." (Beatty v. Knowles, 4 Pet. 152.) A corporation is limited in its faculties to the transaction of the business expressed in the act of incorporation, and if it proceed to make contracts or engage in busi-

ness forbidden by the act, the contracts so made, and all the securities which it may take for their enforcement, will be held totally void and of no effect. (Tallmadge v. Pell, 3 Seld. 328; Beal v. Fulton Bk., 3 Wend. 582; Bk. of the U. S. v. Owens, 2 Pet. 527.) In the act of the Kentucky Legislature incorporating plaintiff, power is expressly given to loan money, deal in bills of exchange, checks and promissory notes, and to discount, upon banking principles and usages, bills of exchange, post notes, promissory notes, and other negotiable paper, for the payment of a sum of money certain. By the law of Kentucky, corporations and individuals alike are both forbidden to take a higher rate of interest than six per cent. per annum; but there is nothing in the act chartering the plaintiff tending to show that it was intended to place it on a different footing from individuals in regard to extra-territorial contracts.

The law of the place where contracts are made and to be performed must govern. We will not attempt to execute the usury laws of Kentucky in respect to contracts made here.

The rule is, that interest is to be paid on contracts according to the law of the place where they are to be performed; where interest is expressly or impliedly to be paid. A contract for loan, made payable in a foreign country, may stipulate for interest higher than that allowed at home; and if the contract be illegal there, it will be illegal everywhere. But if it be legal where it is made, it will be of universal obligation, even in places where a lower interest is prescribed by law. (Sto. Bills of Ex. § 148.)

The charter obliges the plaintiff to observe the laws of Kentucky regarding interest as to loans and contracts made within the jurisdiction of that State; but it is not required to comply with the laws of that State on the subject of the rate of interest in making contracts in other States, and which are there to be performed. As to these latter contracts the *lex loci contractus* governs. (Bard v. Poole, 12 N.

Y. 495; Frazier v. Wilcox, 4 Rob., La., 517; Knox v. Bk. U. S., 26 Miss. 655.)

The second instruction, then, given by the court was erroneous, and for this the judgment will be reversed and the case remanded. The other judges concur.