# WHEELING.

## WILSON v. BRADEN et al.

Decided June 12, 1900.

1. FOREIGN JUDGMENT—*Effect on Tittle.*

A judgment or decree of a court of another state has no effect to pass title to or affect land in this State, nor can a sale or conveyance under it by a trustee or commissioner appointed by it do so. (p. 198).

2. FOREIGN COURT—*Trustee Substituted by.*

A trustee appointed or substituted by a court of another state has no power as such to convey land in this State. (p. 198).

3. SALE BY COMMISSIONER—*Authority—Evidence.*

When a conveyance of land made by a special commissioner under a sale under a decree of a court is offered in evidence to pass title, it must be accompanied by either the whole record of the cause, or enough to show that the parties holding title affected by the deed, and also the land itself, were before the court, and that it was decreed to be sold, and was sold, and the sale confirmed by the court, and that authority was given by the decree to the commissioner to make the conveyance. The recital in the deed of these important facts is no evidence of them, against strangers to the deed, contesting its effect. (p. 200).

4. EJECTMENT—*Outstanding Title—Validity.*

An outstanding title in a third person, in order to defeat the plaintiff's recovery in ejectment, must be a present, subsisting, legal title, not one barred by the statute of limitations, abandoned or otherwise lost. It must be one which the party owning it could now assert. The burden is on the defendant to show the present validity of such title. (p. 202).

5. POSSESSION—*Ejectment—Defense.*

One who is in actual possession of land, and sued in ejectment, cannot defeat recovery by showing that before the action he had conveyed his title to another. (p. 203).

6. INTERLOCK—*Possession—Older Title.*

Where there is an interlock between two tracts of land claimed under different titles, the possession under the junior claim outside the interlock does not give that claim possession of the interlock; but, if the junior claimant is in actual possession within the interlock, he has possession of the whole interlock, and the statute of limitations runs in his favor against the older title, if the claimant under the older title, though in actual possession

of his tract, is not in actual possession inside of the interlock. If the claimant under the older title is in actual possession within the interlock, that posession extends to the whole interlock, except where the junior claimant is also in actual possession within the interlock, and then the possession of the junior claimant is limited to his inclosure, and the possession of the owner of the older title covers the residue of the interlock. The actual possession under the older title anywhere within its bounds gives actual possession of the whole tract, including the interlock, unless the adverse claimant is in actual posession of the interlock. (p. 204).

7. EJECTMENT—*Verdict—Description.*

In ejectment, when a part of the land claimed in the declaration is found for the plaintiff, and a part for the defendant, the verdict must specify and describe the parts found for each by some method of description reasonably definite, such as is required of a declaration in that action. (p. 207).

Error to Circuit Court, Ritchie County.

Action by Henry S. Wilson against George W. Braden and John Deem. Judgment for defendants, and plaintiff brings error.

*Reversed.*

AYERS & IRELAND and W. N. MILLER, for plaintiff in error.

ROBINSON & PIERPOINT and P. W. MORRIS, for defendants in error.

BRANNON, JUDGE:

Henry S. Wilson brought an action of ejectment in Ritchie County circuit court against George W. Braden and John Deem resulting in a judgment for defendants.

Wilson claimed under a patent to Tilton, dated August 4, 1785. Braden and Deem defended under a patent to Dorsey Pentecost, Samuel Purviance and Robert Purviance, dated 15th October, 1784, and two patents dated 1st September, 1860, to Purviance and Williams, as trustees for the estates of Robert and Samuel Purviance, and under possession.

In order to connect with the older patent of 1784 Braden gave in evidence a certain record of proceedings in the circuit court of Baltimore, Maryland. It showed a petition appearing to be an application in 1787 by Samuel Purviance for discharge as an insolvent upon surrender of his estate. It is purely *ex parte,*

without process to anyone. This land is not mentioned in the list of assets. This part of the record has no relevancy to the case, and is so indefinite that I should not have mentioned it as pertinent to the case. It appears from other parts of that record that James M. Camp, as special commisisoner acting under a decree of the circuit court of Augusta county, Virginia, in a case therein in 1838, directing certain land of Samuel and Robert Purviance to be sold, conveyed the land to Donaldson as trustee for creditors of said Purviances. How Donaldson became trustee does not appear. He resigned in the Baltimore court, and Williams was made trustee in his place, and he conveyed land to parties from whom the defendants purchased. The deed from Williams gives as his only authority for acting his appointment by the Baltimore court. This record does not suggest how the West Virginia land got into the hands of Donaldson, trustee. It does not appear that it was at all a subject matter before the court in a suit or in anywise calling for its action, and the court never assumed to pass any decree for its sale or directing the trustee to convey; it only substituted Williams as trustee in place of Donaldson. The proceeding was wholly *ex parte*. No parties appear from the record. How, then, could it operate upon any parties? But even if the court had the land and parties before it, that Maryland court could not itself sell, or by a commissioner, trustee or other agent sell, land in Virginia, as no state can give its laws force outside of its territory, nor can the decrees of its courts operate upon land outside of it. *Pennoyer* v. *Neff*, 95 U. S. 714, 722. As Judge Moncure said in *Dickinson* v. *Holmes*, 8 Grat. 410: "It is undoubtedly true that real estate, or immovable property, is exclusively subject to the laws of the government in whose territory it is situated, and no writ of sequestration or execution, or any order, judgment or decree of a foreign court can be enforced against it." "In respect to immovable property every attempt of a foreign tribunal to found a jurisdiction over it must be nugatory, and its decree must be forever incapable of execution *in rem.*" Story, Conflict Law, 551; 1 Rob. Prac. 336. It is true that if a court of one state or foreign country has a person before it, subject to its jurisdiction, it may, by action direct upon him, affect property in another state or country by operating on the person by compelling him to make a personal conveyance of the land there, or do any act which, of itself, without regard

to the decree, would affect the land according to the *lex rei sitae;* but the cases so holding admit that the decree, in and of itself, does not affect the foreign property, but affects it only indirectly by operating *in personam* to compel a transfer according to the decree, and that the court of the state where the land is located may disregard the decree. If the conveyance is made pursuant to the decree, it is that, not the decree, which passes title. *Massie* v. *Watts,* 6 Cranch 160; *Farley* v. *Shippen,* Wythe's R. 135; *Guerrant* v. *Fowler,* 1 H. & M. 5; *Dickenson* v. *Hoomes,* 8 Grat. 410. If even this Maryland court had decreed a sale or directed a commissioner to execute a deed, but it did not, it would pass no title. "A Virginia court has no jurisdiction over land in another state, and cannot by its order of sale or decree, or by deed of commissioners (merely as such) pass the title to such land. *McLaurin* v. *Salmons,* 11 B. Monroe 96. The court of one state has no power over land in another, except through the person of its owner; it cannot act for him in making a conveyance through a mere commissioner, but it may compel the owner himself to convey the land, and such conveyance will be as effectual in another state as if made at his own mere will." I Rob. Prac. 342. "A court of chancery, acting in *personam,* may well decree the conveyance of land in another state, and may enforce the decree by process against the defendant. But neither the decree itself, nor any conveyance under it, except by the person in whom the title is vested, can operate beyond the jurisdiction of the court." *Watkins* v. *Holman,* 16 Peters 26. Now, the court allowed this record to go in evidence to the jury for general purposes in the case. The jury might well have taken it as proving that defendants had the title conferred by the older grant of 1784. That it was so used is shown by defendants' instruction No. 4: "If the jury believe from the evidence that defendant, George Braden, or those through whom he claims, had or have the senior patent to the land in controversy, and the better and stronger title, and neither plaintiff nor defandant had any actual, open, notorious, visible, hostile, exclusive possession to the other, then the jury must find for the defendant George Braden." Thus, Braden relied upon superior title under that senior patent, without regard to possession, and used that Baltimore record to connect himself with it, when it did not do so. We can imagine nothing more hurtful to the plaintiff's cause. Its use was not re-

stricted to show color of title. It was not admissible for that purpose even, nor necessary, as the defendant could use his mere deed and the junior patents for that purpose. Again: In this record is a deed made by Camp, as commissioner under a decree of a Virginia court, conveying land to Donaldson as trustee. If Donaldson had any title, he got it by this deed; but not a letter of authority in Camp to make this deed is shown. The decree giving Camp power to convey does not appear; not an item of the Virginia record was produced. This was essential to give any effect whatever to that deed. You must give in evidence, as a general rule, in such case, the whole record; but surely enough to show that the party holding the title to the land and the land were before the court; that that land was decreed to be sold, and was sold, and the sale confirmed and authority given by decree to the commisioner to convey. That commissioner does not own the land. He has a mere naked authority uncoupled with any personal interest. His authority to make the very deed for the very land he conveys must appear by the record. This has been so often held. *Waggoner* v. *Wolf,* 28 W. Va. 820. The recital in that deed of Camp's authority under decree is no evidence against third parties claiming adversely to it, and denying his authority to convey. *Walton* v. *Hale,* 9 Grat. 198. Yet this deed went in evidence for Braden to show title, to connect Braden with the old patent, and was used by the jury as such in connection with said instruction. That deed did not show title. It did not connect Braden with the patent of 1784. Braden's instruction No. 4 quoted above was improperly given, because not pertinent to the case, no connection being shown by him with the senior patent to enable him to stand on senior title.

Braden's instruction No. 5 was improper, as given in this case, because it puts as an element in its theory that the Purviances entered into actual possession under the patent of 1784, when no evidence showed that fact. It is also wrong in stating that Braden's possession would be referred back to that patent, when no evidence connected him with it.

Braden's instruction No. 7 is bad. It says that even if plaintiff had possession until 1879 or 1883, yet if thereafter Braden had adverse possession, the jury must find for Braden. Now, plaintiff claimed that under the evidence such possession as

Braden had was obtained from Bradley, a tenant under the plaintiff's title, and that this fact made Braden a tenant of the plaintiff, so that he could not hold adversely to him. If such is the fact, Braden's possession would be the plaintiff's possession, not adverse to the plaintiff, and could not ripen into title. *Allen* v. *Bartlett,* 20 W. Va. 46; *Emerick* v. *Tavenner,* 9 Grat. 224. If, as assumed in the instruction, plaintiff had possession for the statutory period, that gave him title by possession, though he had not superior title, and even if the land was thereafter unoccupied; the plaintiff's title having thus become good by time, Braden could not devest it out of the plaintiff, except by adverse possession for ten years. *Parkersburg Industrial Co.* v. *Shultz,* 43 W. Va. 483. This instruction tells the jury that if Braden had actual adverse possession, the verdict must be for Braden, ignoring the question, whether Braden obtained possession from a tenant under the plaintiff's title, thus discharging the jury from passing on that question. This is error, as often decided. *Wooddell* v. *Improvement Co.,* 38 W. Va. 23. It is misleading for a court, among a confusing number of instructions, to give one taking only certain facts, telling the jury that if they exist the verdict must inevitably be for a party, when there is evidence presenting other questions of fact, which, if existing, militate against the facts stated, and deny them the legal effect given by the instruction. Braden says, "I obtained adverse possession and held long enough to give me title." The instruction then says, "If this is so, the jury must find for Braden," when there stood Wilson saying, "I grant that, if it stood alone; but Braden got his possession from my tenant, and though he calls his possession adverse, it is not; he is my tenant still; but his question is not put to the jury in this important instruction. Other instructions may put it; but each instruction that turns only on one question, called a binding instruction, should put both theories touching it, else it may mislead the jury. The question of how the possession was derived was a material one in Braden's case, because upon it turned the question whether such possession was adverse or not.

Deem's instruction No. 8 is bad. It says that in ejectment involving title to land, the plaintiff must recover on the strength of his own title, not on the weakness of his adversary's title, and that the "defendant may defeat plaintiff by even showing

an outstanding title in another, although the defendant may have no title in himself." This does not state the proposition as the courts uniformly state it. To enable a defendant to defeat a plaintiff showing better title than he shows, a defendant should not defeat the plaintiff merely because at some time some one else had a superior title, when the defendant has no connection with it, unless the outstanding title is "a present, subsisting, operative legal title, on which the owner could recover, if asserting it in an action. It is not for the plaintiff to disprove its validity." *Parkersburg Indus. Co.* v. *Shultz,* 43 W. Va. 470. There this subject is discussed. I add to the authorities there given *Jackson* v. *Hudson,* 3 Johns. 375; 3 Am. Dec. 500; *McDonald* v. *Snyder,* 27 Mo. 405; *Peck* v. *Carmichael,* 9 Yerg. 325. The last case holds that "an outstanding title to bar recovery in ejectment, must be a present, subsisting, legal title, not one abandoned or barred by the act of limitations." This instruction omitted an important element of a legal proposition as stated by the courts; it failed to call on the jury to say whether the patent of 1784 was yet a live, good, superior title. Was it forfeited or sold for taxes, so that the plaintiff got it? Was it lost by possession under plaintiff's title, the patent of 1785? Some evidence of plaintiff would tend to show this; yet the instruction does not call attention to this important matter under this legal proposition. It does not state the law correctly. Under it any title once good, but now lost, might be used. If a defendant comes into court and for plea says that the plaintiff ought not to have and maintain his action, because another title in some stranger is better than the plaintiff's title, should he not in justice be required to show it? He holds the affirmative on that point, and must he not show, not merely that there once was, but also that there yet is, such superior title? This instruction was plainly material and hurtful to the plaintiff. If this instruction was intended to apply to show title under Mrs. Deem's claim, it is improper in the case, first, because it was later in birth and inferior to the plaintiff's title. Deem showed no connection with the patent of 1784. He introduced a deed from Camp as commissioner to Webb made under a decree of the circuit court of Augusta county, but introduced no record to authorize that deed, as shown above as to the deed from Camp introduced by Braden. It made no connection between Deem and the old patent. Deem's

right being thus junior to that of the plaintiff, must be shown to have become good by possession, and that would not require such instruction. Such title would not be an outstanding title in a third person, as that was the title under which Deem justified. In this view the instruction was irrelevant.

Deem introduced a deed from Dilworth to himself, and followed this up with other documents to show that Deem conveyed the land to Clammer, and Clammer conveyed to Hester Deem, wife of defendant John Deem, and that she conveyed to Mary C. Braden. The effort was to show that the title was outstanding in Mary C. Braden, or that John Deem had no longer any title at the commencement of the action. The deed from Hester A. Deem is void, because the husband did not join in it, and this left the title in her, and presumably she and her husband were living on the land, he, the head of the family, in possession; but I do not mention this as very material. If Deem expected to defend because his title had before suit been passed away, he could not do so, if in possession at the beginning of the suit; for the Code allows the person in possession to be sued. He represents his own title or that of another under whom he claims, for the purposes of the suit. He is occupant detaining against the supposed rightful title, and as between him and its claimant he may be sued, and, if in the wrong, ejected. In view of this defense by Deem, Wilson asked the court, which refused, to instruct that Deem having employed counsel and defended the action, and given evidence that he was occupying and farming part of the land in controversy, it was no defense for him to show that before the suit he had conveyed the land away. It was error to refuse that instruction, for reasons above stated. Also, if Deem did not want to defend, why did he not enter a disclaimer? Why not surrender? As stated by JUDGE GREEN in *Beckwith* v. *Thompson,* 18 W. Va. 135, if he claimed no interest, a verdict against him would take nothing from him but costs. He did not disclaim, but made full defense, and being in possession, he could not defend on the score that he had parted with title before suit.

Deem's instruction No. 9, telling the jury that possession under the deed from Dilworth to Deem for the statute period would call for a verdict for Deem, is bad in not saying that such possession under the Dilworth deed must be within the interlock, if Wilson was in possession of any part of his land, be-

cause that being the older title shown, possession anywhere under it gave possession over the interlock, unless Deem had possession inside that interlock.

Deem's instruction No. 10 is open to the same objection. These instructions do not have regard to that land in controversy, the interlock.

Deem's instruction 12 is bad. It says that if Dilworth, who conveyed to Deem the land claimed by Deem, by deed dated 1st November, 1872, had possession for more than ten years before the time when the vendors of Wilson commenced operations of mining on their land, and that if Deem and his vendees had possession after 1st November, 1872, then no act of vendors of Wilson could put plaintiff in possession of the land. Very indefinite. What does it mean? It is error to give an instruction that may not readily be understood by the jury. It bewilders, may mislead. Dilworth had actual possession, say; the subsequent operations of Wilson's vendors, it is said, could not put Wilson's vendors in possession of the land in controversy. That depends. It was a question whether the Dilworth deed covered any of the land of the plaintiff. If it did not, the instruction would not be proper. There would be then no clash, and the possession of Dilworth and Wilson's vendors would have no bearing on each other. This instruction assumes or predicates its law upon the theory that the land of Wilson and that of Dilworth interlock. An instruction must not assume a controverted fact, and give a legal result therefrom. If the tracts do interlock, the instruction puts bad law. If Dilworth had first actual possession outside of the interlock, the Wilson title appearing older, Dilworth's possession would not include the interlock; but if Dilworth had actual possession inside the interlock, then possession by Wilson's vendors taken afterwards, or any time, not inside the interlock, would not displace Dilworth's possession in it. The instruction should have stated that if Dilworth's land covered any part of the land in controversy, and if his possession was inside the interlock, then the operations of Wilson's vendors would not change the right of Dilworth, or put plaintiff's vendors in possession of the land in controversy. If Dilworth did not have actual possession inside the interlock, then, when the owners of the Wilson title took possession, it gave them actual possession of that interlock, their title being senior. If the junior claimant has actual

possession within an interlock he has possession of the whole interlock, unless the senior claimant has also actual possession within the interlock, and in such case the possession of the junior cliamant is limited to his enclosure, while the residue of the interlock is in the possession of the senior claimant. *Garrett* v. *Ramsey,* 26 W. Va. 345. This instruction may also be said to assume that Dilworth's possession was within the interlock, a vital point; and if so, that is the objection to it; and if it does not so assume, then it simply says that if Dilworth had possession, no matter whether inside or outside the interlock, the subsequent possession under the Wilson title would have no effect in limiting Dilworth's possession, but that wherever it was, it would give title to the land in controversy; whereas, such possession outside the interlock would not in any time give title.

Deem's instruction No. 13, touching the effect of the conveyance by Deem of the land before suit, is bad for reasons above given. These conveyances, being younger, could show no outstanding superior title. It was error to admit those deeds. They had nothing to do with the case.

I see no objection to the other instructions.

Another point of error made by Wilson's counsel is this: Wilson sued for a boundary of two thousand five hundred acres. Braden claimed only fifty acres, Deem two hundred and thirty-six acres. The verdict was general for the defendants, not specifying the parts which the defendants claimed, nor saving to the plaintiff any part of the two thousand five hundred acres. Wilson says there was no pretense, even, that he hid not own the balance of the boundary, and that his claim was good to such balance, and that in any view the verdict should have specified the particular land the defendants were entitled to, and what he was entitled to. Is this error? We think it is, and that because of this defect the judgment should have been arrested, and a new trial granted. No proper judgment could be given on such a verdict. Wilson suing for two thousand five hundred acres, and the defendants not claiming all of it, but parts, should have disclaimed to all the land in the declaration described, except those parts. That would have reduced the controversy to those parts. They did not do this, but pleaded not guilty as to all. This plea admits that the party making it is in possession of all the land sued for. 7 Ency. Pl. & Prac. 341-342, citing *Ulsh* v. *Strode,* 13 Pa. St. 433; *Hill* v. *Hill,* 43 *Id.*

521; *James* v. *Brooke,* 6 Heisk. (Tenn.) 150; *Gibson* v. *Norway,* 69 Me. 579. *Beckwith* v. *Thompson,* 18 W. Va. 103 holds that this plea dispenses with proof that defendant was in possession of the land claimed, and calls on the plaintiff only to prove his right to possession, his title. Thus it holds logically that the plea admits defendant's possession. Thus, by law, this general plea of not guilty without disclaimer as to any part of the land, and without being not guilty as to a particular part, admits the defendant to be in possession of all, imports a claim to all, and if the verdict and judgment be for the defendant, they import that defendant has better right to all the land, and would be *res judicata* against the plaintiff as to all the land, unless, as I think he would be entitled to do, he could show that in fact the controversy was only as to a particular part; but years afterward the defendant, from perishment of evidence, may be unable to show this, and he has clear right to demand that the record shall so speak and stand as a perpetual memorial of what was actually tried and found. This seems very plain. It may be that the practice is not uniform in this matter in different sections of the State. In some places it is not observed. There ought to be a fixed rule. *Lowe* v. *Settle,* 22 W. Va. 387, sustains this position. It held a verdict fatally defective, because it found that the defendant was entitled to hold a specified part of the land described in the declaration, and that he had no title to any other land described in it, but did not find that the plaintiff was entitled to recover the residue, and therefore failed to find whether the defendant was entitled to hold that residue or not. Now, if that verdict was bad, what shall be said of this one? That found for the defendant a specific part, and that he had no claim to the balance; whereas, in this case the verdict specifies no parts which the defendants were entitled to hold, but implied that they were entitled to all the land, the plaintiff none. The verdict in this case is much more vulnerable than the one in that case. In fact, our Code brands this verdict. Chapter 90, section 23, says that if the plaintiffs establish their right, "the verdict shall be for the plaintiffs, or such of them as appear to have right to the possession of the premises, or any part thereof." This obviously means that if a part only is recovered, that part shall be specified. That is the case here, as was really intended by the jury. Section 25 says that "when the right of the plaintiff is proved to all the

premises claimed, the verdict shall be for the premises generally, as specified in the declaration; but if it be proved to only a part or share of the premises, the verdict shall specify such part particularly, as the same is proved, and with the same certainty of description as is required in the declaration." These provisions mean that when the plaintiff recovers all he claims, the verdict may be general; and if the defendants hold all, it is general; but when the defendants hold a part, the verdict should specify what parts they hold, what part the plaintiff holds. If the defendants have separate parts, each should be specified. In *Reynolds* v. *Cook,* 83 Va. 817, the declaration claimed an entire tract, and the defendant claimed only a right to quarry limestone from it, and the verdict was general for the defendant, and the court reversed the judgment, saying that the verdict should have been for the plaintiff, except as to the right to quarry and remove limestone. It cited a section of the statute the same as section 18 in cahpter 90 of our Code, "The plaintiff may recover any specific or any undivided part or share of the premises, though less than he claimed in the declaration." The court said, and the same is here applicable, that "the verdict and judgment would conclude the plaintiff and his privies as to the title and right of possession established in such action as to the whole tract; for the statute in express terms enacts that 'any such judgment in an action of ejectment * * * * shall be conclusive as to the title or right of possession established in such action upon the party against whom it is rendered,'" the same for our purpose as section 35 chapter 90, Code 1891. *Callis* v. *Kemp,* 11 Grat. 78, and *Slocum* v. *Compton,* 93 Va. 374, say that where less land is recovered than demanded, the part should be described, and this is the same as to say that when the evidence shows that plaintiff and defendant are each entitled to hold part of the land, each part should be described in the verdict. For this strong reason the motion to set aside the verdict should not have been overruled.

Therefore, we reverse the judgment, set aside the verdict, and grant the plaintiff a new trial.

*Reversed.*