## Jesse Courtney v. Hiram A. Henry.

1. LIS PENDENS—*when chancery proceeding becomes.* A chancery proceeding only becomes *lis pendens* when service of summons has been had.

2. FOREIGN DECREES—*effect of, with respect to real property in this state.* The decrees of sister states respecting the title to land situated in this state are entitled to no consideration whatever.

3. REAL PROPERTY—*power of foreign court to effect transfer of.* Courts of one state cannot by decree effect the legal transfer of the title to real estate situated in other states.

4. CONSTITUTIONAL LAW—*respecting credit to be given to foreign decrees.* The provision in the statutes of the United States which provides that full faith and credit shall be given in each state to the judicial proceedings of every other state, applies only to personal obligations, duties, contracts and liabilities other than those which affect interests in real estate.

Action of forcible entry and detainer. Appeal from the Circuit Court of Vermilion County; the Hon. MORTON W. THOMPSON, Judge, presiding. Heard in this court at the November term, 1903. Affirmed. Opinion filed June 28, 1904.

D. D. EVANS and WALDO CARL EVANS, for appellant; CHARLES W. CONSTANTINE and JAMES A. MEEKS, of counsel.

J. B. MANN, for appellee.

MR. JUSTICE GEST delivered the opinion of the court.

Appellee Henry began suit before a justice of the peace,

against appellant, under the Forcible Entry and Detainer
statute to obtain possession of a tract of land in Vermilion
county. In the justice court, judgment was rendered for,
the plaintiff, Henry, and defendant appealed to the Circuit
Court, where the case was tried by the court without a jury,
and judgment again rendered for the plaintiff, and defend-
ant appealed to this court.

A. L. Claypool leased the premises in question by lease,
in writing, dated November 27, 1894, to Mat Kinney for the
term of one year from March 1, 1895. Kinney remained
in the occupancy of the premises as tenant of Claypool until
in February, 1903, when he moved away. He had told
Claypool on or about the August previous that he would
leave the premises. On October 25, 1902, Claypool leased
the premises to the plaintiff, Henry, for one year from
March 1, 1903, by written lease executed by both parties.
Before the first of March, 1903, and after Kinney had va-
cated the premises, Courtney took possession. Thereupon
Henry, on March 1, 1903, made demand in writing of Court-
ney for possession of the premises, and on the 3rd day of
March commenced this suit before the justice of the peace.
The foregoing is the substance of the proof on the part of
the plaintiff.

The defendant offered in evidence a lease of the premises
to him from one John W. Bookwalter, dated October 11,
1902, for a term of one year from March 1, 1903; also an
amended and supplemental bill in chancery in the case of
John W. Bookwalter v. A. L. Claypool filed in the Circuit
Court of Vermilion county, July 9, 1902; also an authenti-
cated copy of the record of certain proceedings in the Court
of Common Pleas of Clark county, Ohio, in a suit by John
W. Bookwalter v. Augustus L. Claypool; also authenticated
record of same case in the Circuit Court of said Clark county
on appeal from the said Court of Common Pleas; all of
which proof offered by defendant was objected to by plaint-
iff and objections sustained by the court.

The said bill in chancery filed in the Vermilion Circuit
Court averred that complainant and defendant therein were

brothers-in-law; that Claypool had been his trusted confidential business agent, authorized to collect money, pay out money, check out money, and "had authority from your orator to do and perform everything necessary to be done in and concerning your orator's estate;" that complainant, intending to travel in foreign lands, made a deed in fee simple absolute to Claypool of the lands in controversy and other lands upon certain trusts for the complainant which were not expressed in writing, but rested in parol; that complainant, Bookwalter, and defendant, Claypool, both resided in Ohio, and said deed upon said trust was executed and delivered in Ohio; that by the laws of Ohio said trusts were not required to be put in writing but were as valid in parol as if reduced to writing and signed by the trustee; that Claypool acted and continued to act as complainant's trustee until October 8, 1901, when the relation ceased and complainant requested Claypool to reconvey the lands in controversy to him which he refused to do; that after filing said original bill in the Vermilion Circuit Court, complainant began proceedings in the Court of Common Pleas of Clark county, Ohio. The bill then sets out the petition filed in Clark County Common Pleas Court, Claypool's answer thereto, and the decree of that court on the hearing. The prayer of the bill is for a reconveyance of the premises to Bookwalter. The record of the Court of Common Pleas shows that Claypool was ordered to reconvey to Bookwalter, and in case of his default so to do that a master appointed make the conveyance for him. The record of the Circuit Court of Clark county shows that on the appeal from the Court of Common Pleas, Claypool was ordered to reconvey to Bookwalter in fee simple the premises in controversy and that he was enjoined from encumbering the property or transferring title.

The foregoing was all the evidence and thereupon the appellant, Courtney, submitted ten propositions of law, all of which were refused by the court.

The first, in substance, is that the said bill of complaint, filed by Bookwalter in the Vermilion Circuit Court, was

notice to the plaintiff, Henry, of Bookwalter's claims to the property in controversy and of the matters and things set forth in the bill. Without discussing the question as to what effect would be produced upon the rights of the plaintiff, Henry, if he were chargeable with notice of the filing of said bill, it is enough to say that the mere filing of the bill was no notice. Doubtless counsel are seeking to invoke the doctrine of *lis pendens*. " *Lis pendens* begins from the service of the summons or subpœna after the filing of the bill." Norris v. Ile, 152 Ill. 199. "The commencement of a suit by filing a bill does not constitute *lis pendens* until summons or subpœna has been served." Holbrook v. Ford, 153 Ill. 646; Harding v. American Glucose Co., 182 Ill. 642. It does not appear in this record that on the filing of the bill any summons was issued or served. The court did not err in excluding this bill.

The second, third, fourth, fifth, sixth, seventh and eighth propositions are based upon the records offered by defendant, of the Court of Common Pleas and the Circuit Court of Clark county, Ohio, and in substance state that after said proceedings Claypool had but the naked legal title to the premises; that Bookwalter had the equitable title and the right of possession and was rightfully in possession by his tenant, Courtney, and Claypool, not having the right of possession, could not put Henry in possession. The ninth was that plaintiff, not having been in the actual possession of the premises and not having succeeded to the right of Mat Kinney, who was in the actual possession thereof, could not maintain this action. The tenth was that a person in actual possession of land is deemed to be rightfully in possession and the burden of proof is upon him who disputes such rights of possession.

The entire argument of counsel for appellant is based upon the bill filed in the Vermilion Circuit Court and the records of the Common Pleas and Circuit Courts of Clark county, Ohio. And so the real question is whether the trial court erred in excluding those matters. We have already stated that the court did not err in sustaining the

Courtney v. Henry.

objection to the bill filed in the Vermilion Circuit Court. Neither did the court err in excluding the records from Clark county, Ohio. This is a suit concerning and affecting interests in real estate situate in this state; determining the rights of these litigants, citizens of this state, in lands over which the dominion of this state extends absolutely, exclusively, supremely. The titles to estates and interests and rights in the lands within the territorial limits of this state are not subject to the laws of any other state or the decrees or judgments of the courts of any other state in any matter whatever, in any particular. This proposition lies at the basis of all independent government, of sovereign existence. A state without lands, it is impossible to conceive of; a sovereign state with its lands subject to the disposition or control, to the slightest extent, of the courts of another state is a misnomer.

It is argued by counsel for appellant that these records are admissible under the constitution of the United States and the legislation of Congress in pursuance of its provisions. Section one of article four of that constitution provides: "Full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state." Unless that provision justifies and requires the admission of these records they were properly excluded. What is the scope of that provision? To what judicial proceedings does it apply? Manifestly only to such as are within the jurisdiction of the court rendering the judgment or decree and to the extent that such court has power to proceed. "Jurisdiction to be rightfully exercised must be founded either upon the person being within the territory or the things being within the territory. No sovereignty can extend its powers beyond its own territorial limits to subject either persons or property to its judicial decisions." Story on Conflict of Laws, sec. 539. "A foreign court cannot by its judgment or decree pass the title to land situate in another country; neither can it bind such land by a judgment or decree that in default of the defendants in the suit conveying, it shall be conveyed by the deed of its own officers to the plaintiffs." Ibid., sec. 543.

In Watts v. Waddle, 6 Peters, 391, a decree of a court of Kentucky came under the consideration of the United States Supreme Court. That decree required the defendants therein to convey to the complainant certain lands situate in Ohio and that upon failure so to convey, a commissioner make the deed for them. The commissioner made the deed. With reference to the decree and the commissioner's deed the court says: "A decree cannot operate beyond the state in which the jurisdiction is exercised. It is not in the power of one state to prescribe the mode by which real property shall be conveyed in another. This principle is too clear to admit of doubt; but it is insisted that the deed executed by the commissioner, under the decree, by virtue of a statute of Kentucky, was a legal conveyance in that state, and as such, by a statutory provision, is good in Ohio.

"The words of the statute referred to are, 'that all deeds, mortgages, and other instruments of writing, for the conveyance of lands, tenements and hereditaments, situate, lying, and being within this state, which hereafter may be made and executed and acknowledged or approved in any other state, territory or country, agreeably to the laws of such state, territory or country, or agreeably to the laws of this state, such deed, mortgage or other instrument of writing shall be valid in law.'

"The deed executed by the commissioner in this case, must be considered as forming a part of the proceedings in the court of chancery; and no greater effect can be given to it than if the decree itself, by statute, was made to operate as a conveyance in Kentucky, as it does in Ohio.

"The question then arises whether, by a fair construction of the above provision, it is in the power of a court of equity sitting in Kentucky, by force of its decree, to transfer real estate in Ohio.

"Can this effect be given to such decree by this statute? It is believed that no state in the union has subjected the real property of its citizens to the exercise of such a power. Neither sound policy nor convenience can sustain this con-

Courtney v. Henry.

struction; and unless the language of the statute be imperative, no court could sanction it. The legislature of Ohio could never have intended by this provision to place the real property of the citizens of that state at the disposition of a foreign court. The language used in the act does not require such a construction. It refers to deeds executed by individuals in any other state; and not to conveyances made by the decree of a court of chancery. This is the true import of the section, and it does not appear that the courts of Ohio have given it a different construction. Thus construed, it promotes the convenience of non-residents who own lands in Ohio, and may desire to convey them; and in no point of view can it operate injuriously to the interests of citizens of the state."

It is not necessary to multiply authority; there is abundance of it. None can be found to the contrary. The said section of the constitution refers only to personal obligations and duties, contracts and liabilities, other than those which affect interests in real estate. Such is the doctrine of international law and under the constitution and laws of the United States and the several states, and any language in any opinions of our courts seeming to state differently will be found to be *dictum*.

In City Ins. Co. v. Commercial Bank, 68 Ill. 353, it is said : " Whatever may be the effect of the decree of court in the state where rendered, under the local laws, it is difficult to comprehend upon what principle it can operate to divest title in real estate in Illinois. The decree must be construed to have this effect, otherwise it can constitute no defense to the action. How can it be said the decree can have any extra-territorial operation, so as to divest one party of the title and confer it upon another? No doctrine is better settled by authority, than that the title to real estate or immovable property can only be affected in the mode recognized by the laws of the state within whose territory it is situated." And again : " Whatever may be the doctrine on this question as to personal property, it is not possible to maintain it in its application to real property

situated in a foreign jurisdiction. Mr. Story concedes that the courts of England and the United States have arrived at opposite conclusions as to the effect of statutable transfers of movable property, under the bankrupt or insolvent laws of the debtor's domicile. But he adds, 'All the authorities in both countries, so far as they go, recognize the principle, to its fullest extent, that real estate or immovable property is exclusively subject to the laws of the government within whose territory it is situated. Indeed, so firmly is this principle established, that in cases of bankruptcy the real estate of the bankrupt situated in foreign countries is universally admitted not to pass under the assignment, although, as we have seen, there is great diversity of opinion as to movables.' Story, Conflict of Laws, sec. 428." And again: " Aside from the question of policy, it is an unanswerable objection to the right set up by the interpleading claimant that the laws of Illinois have not provided that title to lands within the limits of the state may be transferred by the operation of the laws of a foreign state, or the decision of its courts. Lands can only be alienated in the mode prescribed by our laws."

° Otherwise stated, the argument is that the deed and verbal agreement of trust were made in Ohio, that their construction, validity and effect are to be determined by the laws of Ohio, and the courts of Ohio having so determined, the courts of Illinois are bound thereby. If it be true that the courts of Illinois would be bound to give " full faith and credit " to such foreign decrees, to receive them as conclusive evidence when duly presented by bill in equity as is sought to be done in this case, then it results necessarily that the courts of Ohio have jurisdiction over the lands of Illinois, and all rights, titles and interests therein; all that the courts of Illinois have to do is to carry out the mandate of the Ohio courts. The mere statement of the proposition is enough. No answer is needed. Such a conclusion makes the domain of this state subject to the possibly varying decision of every state in the union.

Appellant first filed his bill in the Vermilion Circuit Court seeking to have his deed to Claypool declared to be

in trust and then, with that bill pending, proceeded by bill in the courts of Ohio to have the same deed declared in trust, and, having obtained such decree in the Ohio courts, he files his supplemental bill setting up the proceedings in Ohio and seeks to use them in the courts of this state to obtain a decree here reinvesting him with the title and in the meanwhile to enable his lessee to hold the possession on the ground that he, Bookwalter, is the ·equitable owner of the land and as such entitled to the possession as against Claypool and his lessee. That is a mixture of law and equity, of foreign and domestic legislation and judicial procedure which cannot be made in this state.

If the law be, as claimed, that the statute of Ohio permits an express trust to be established by parol without any writing, and, if it further be, as claimed, that such statute of Ohio inheres in and is a part of the contract and is the governing statute in determining whether or not the deed to Claypool can be varied from its express terms so as to change its legal effect within this state, then, manifestly, there is no occasion for the proceedings in Ohio. If the law of Ohio governs on that question, it could be pleaded and proven here and decree had on proper proof.

Claypool, having been in possession of the premises by his tenant, Mat Kinney, for many years; Kinney, a few days before the termination of a year which he was holding, having left the premises; Claypool, having leased the place to Henry for a year from March 1, 1903, and Henry, at the appointed time, having sought to enter, it cannot be said that Claypool's possession or right of possession had ended, that he had abandoned the premises, and that they were vacant and unoccupied when Courtney undertook to enter. When Kinney left, the possession reverted to his landlord, Claypool. Downing v. Mayes, 153 Ill. 330. Courtney, having entered without right or title and having withheld the possession after proper demand therefor by Henry, who under his lease from Claypool was entitled to enter, the judgment of the trial court for the plaintiff was right and will be affirmed.

*Affirmed.*