Argued January 10, affirmed January 23, rehearing denied February 20, 1917.

# WILLIAMS v. WILLIAMS.

(162 Pac. 834.)

**Divorce—Foreign Judgment—Title to Land.**

1. A divorce decree rendered by a court in another state which attempted to settle the title to lands, operating directly on the title, and not by compelling the holder of the title to convey, is void so far as it attempts to convey the title to lands within the state.

**Contracts—Legality—Purchase of Public Lands—Illegal Oath.**

2. An agreement between a husband and wife made in another state that the former should come to the state and purchase a tract of land, for which each should pay half, and title to which should be taken in their joint names, where the husband purchased the land from the state and made an oath, as he was required to do that he was purchasing it for his own use, was not void as against public policy, since the husband could have procured an application and oath from his wife for her share, and he will not be permitted to defeat her claim to a resulting trust in such land to the extent of the consideration paid by her under the agreement.

[As to effect of foreign decree of divorce on dower rights, see note in Ann. Cas. 1913E, 555.]

From Douglas: JAMES W. HAMILTON, Judge.

Department 1. Statement by MR. CHIEF JUSTICE McBRIDE.

This is a suit by William A. F. Williams against L. Belle Williams to quiet title to the west half of section 16, township 31 south, range 6 west, Willamette Meridian, situated in Douglas County. The complaint alleged that the parties were formerly husband and wife, but were divorced by decree of the Superior Court of Napa County, California, on the twenty-ninth day of October, 1913. It was further declared that, in addition to the decree of divorce, the court caused to be entered as part of its decree the following:

"It is further ordered, adjudged and decreed that all of the following described real property, community property of plaintiff and defendant, situated in

Douglas County, State of Oregon, and standing upon the records thereof in the name of William A. F. Williams, to wit: The west half of section 16 in township 31 south of range 6 west of W. M.—be, and the same is hereby, divided and awarded as follows: One undivided half thereof to plaintiff L. Belle Williams, and the remaining undivided half thereof to the defendant William A. F. Williams''; that defendant caused said decree of the California court to be entered in the deed records of Douglas County; and that the same constitutes a cloud upon plaintiff's title.

The answer denies that plaintiff was the owner in fee of the land, and alleged, in substance, that while plaintiff and defendant were husband and wife, and residing in the State of Michigan, defendant employed a timber locator who was familiar with lands in Oregon to select a tract of land which defendant could acquire without residing thereon, and if a tract were found which was satisfactory to defendant, defendant would purchase the same and pay said locator for his services; that it was agreed between plaintiff and defendant that plaintiff should go from the State of Michigan and act as agent for defendant in the selection of the land that defendant proposed to acquire, and, if a tract were found which was satisfactory to plaintiff, that the title should be taken in the name of each of them, each paying an equal share of the purchase price and expense thereof. Under said agreement plaintiff came to the State of Oregon, the defendant paying the expense of said trip, and, with the aid of the timber locator before mentioned, plaintiff examined the land described in the complaint, and entered into a contract to purchase the same from the State of Oregon for $400, the sum to be paid in five annual payments of $80 each, with interest at 6 per cent per annum on deferred payments; that plaintiff, in violation of the contract hereinbefore set out with

the defendant to take the contract for the purchase of said land in the joint name of plaintiff and defendant, entered into a contract with the State of Oregon to purchase the same in his own name. The complaint states that defendant paid more than one half of the purchase price, and that a deed has been issued by the State of Oregon to plaintiff for the whole of said tract, and the title to the land now appears in the records of Douglas County in his name; that by reason of the contract between plaintiff and defendant under which title to said real estate was to be taken in the joint name of both, defendant is in equity the owner of an undivided one half of said real property, and decree is prayed accordingly.

Demurrer to the new matter in the answer having been overruled, a reply was filed putting in issue the new matter alleged in the answer, and averring that plaintiff and defendant before their divorce had purchased with their joint earnings certain lots in the City of Fresno, California, of the value of $2,100, which lots stood in the name of plaintiff; that in 1908 it was agreed between plaintiff and defendant the plaintiff should deed the Fresno property to defendant for her sole and separate use, and that defendant would waive and relinquish all rights and interests of every kind in or to the property of plaintiff, and thereupon plaintiff made a deed to the Fresno property, which the defendant thereafter sold for $2,100 in cash and applied it to her separate use and benefit; that at the time of the conveyance defendant not only consented to waive claim to all other property of plaintiff, but agreed to pay to the mother of plaintiff $300 and interest due on a promissory note theretofore given to plaintiff's mother to secure the repayment of a loan; and that plaintiff has never paid said note, in violation

of her agreement to do so.   The Circuit Court found in favor of the defendant, and plaintiff appeals.

AFFIRMED.   REHEARING DENIED.

For appellant there was a brief and an oral argument by *Mr. Benjamin L. Eddy.*

For respondent there was a brief and an oral argument by *Mr. James C. Fullerton.*

Opinion by MR. CHIEF JUSTICE McBRIDE.

1. The decree of the Superior Court of Napa County, California, was void so far as it attempted to adjudicate the title to lands in Oregon: 7 R. C. L. 1060; 32 Cyc. 674; *Newton* v. *Bronson,* 13 N. Y. 587 (67 Am. Dec. 97); *Bullock* v. *Bullock,* 51 N. J. 444 (27 Atl. 435); *Bullock* v. *Bullock,* 52 N. J. Eq. 561 (30 Atl. 676, 46 Am. St. Rep. 528, 27 L. R. A. 213); *Proctor* v. *Proctor,* 215 Ill. 275 (74 N. E. 145, 106 Am. St. Rep. 168, 2 Ann. Cas. 819, 69 L. R. A. 673); *Gratton* v. *Weber* (C. C.), 47 Fed. 852; *Lindsley* v. *Union Silver Star M. Co.,* 26 Wash. 301 (66 Pac. 382); *Clarke* v. *Clarke,* 178 U. S. 186 (44 L. Ed. 1028, 20 Sup. Ct. Rep. 873); *Courtney* v. *Henry,* 114 Ill. App. 635; *Wilson* v. *Braden,* 48 W. Va. 196 (36 S. E. 367).   No judgment of a court of another jurisdiction can have any effect *per se* upon the title to land.   The only way in which the conveyance of the land beyond the jurisdiction of the court can be effected is by a decree in equity operating upon the person so as to coerce the party.   The decree itself can have no direct operation upon the property: *Carpenter* v. *Strange,* 141 U. S. 87 (35 L. Ed. 640, 11 Sup. Ct. Rep. 960).   The decree of the California court was not *in personam,* but attempted to operate directly upon the land, apparently upon the theory that the

law of community property prevalent in California existed in this state. There are authorities to the effect that, where the court has jurisdiction of the parties, and the question as to a trust in land in another state is actually litigated, and the court decrees the specific performance by the trustee of the trust found to exist, such decree will be enforced by the courts of the state where the lands are situated: *Burnley* v. *Stevenson,* 24 Ohio St. 474 (15 Am. Rep. 621) ; *Dunlap* v. *Byers,* 110 Mich. 109 (67 N. W. 1067); *Wood* v. *Warner,* 15 N. J. Eq. 81; *Mitchell* v. *Bunch,* 2 Paige (N. Y.) 606, (22 Am. Dec. 669). It seems to be established by these and many other decisions that, where the court has the parties before it and actually renders a decree requiring one party to execute a conveyance of real property in another state to the prevailing party, the courts of the latter state will treat such decree as valid so far as it defines the rights of the parties, and will enforce it. But the decree here is equivocal in this: That it does not appear clearly whether it is based upon the theory of a resulting trust arising by reason of Mrs. Williams having furnished the purchase money, whether it was given as a mere incident to the divorce in the same way that our law allows the prevailing party in a divorce suit one third of the realty owned by the party in fault, or whether it was based upon the theory that the law of community property common in California also prevailed here. In the view which we take of the facts in this case it is unnecessary to consider further the effect of the California decree.

Upon the other branch of the case we think the testimony largely preponderates in favor of the defendant, that the agreement set forth in her answer was made; that she paid more than one half of the

purchase price of the land, and has never, by contract or otherwise, waived her right to it.

2. It is claimed that this alleged contract was void as against public policy because the law in force in this state at the time required an applicant for the purchase of land to make an affidavit that he purchased the land for his own use, and not directly or indirectly for the use of another; but there is nothing in the testimony which indicates that the defendant contracted with the plaintiff to make any other or different affidavit from that required by the law, and if he violated his trust and made a false affidavit, it would be poor equity to allow him to take advantage of that fact after using his wife's money to purchase the land. The substance of the contract could easily have been observed by his applying for 160 acres of the land in his own name and notifying his wife of the requirements of the Oregon law so that she might herself have filed a proper application accompanied with the required affidavit for the other 160 acres. It is not probable that a housewife in Michigan was so familiar with the Oregon laws as to know when she sent her husband out here that she herself must make the required affidavit. Indeed, it is not probable that the plaintiff knew this fact, except as every person is presumed to know the law. However this may be, to allow him now to take advantage of the irregularity in the application to defeat his wife's claim to the land, which she furnished him the money to buy and actually paid for out of her own earnings, would be to permit him to come into court and to take advantage of his own wrong.

The decree of the Circuit Court is affirmed.

Affirmed. Rehearing Denied.

Mr. Justice Benson, Mr. Justice Burnett and Mr. Justice McCamant concur.

Mr. Justice Harris taking no part in the consideration of this case.