McEvoy *v.* Grant (et al., Appellants).

Argued January 8, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SADLER, SCHAFFER and MAXEY, JJ.

*Walter Lee Sheppard,* of *Foulkrod, Sheppard, Porter & Alexander,* for appellants.—The agreement made with appellee, McEvoy, by Grant, governing their joint transactions, was beyond the scope of Grant's authority to bind his partners, appellants: Goodhart v. R. R., 177 Pa. 1, 15; Lytle Campbell & Co. v. Somers, 276 Pa. 409; Irwin v. Williar, 110 U. S. 499; Robert's App., 92 Pa. 407; Hamill v. Purvis, 2 P. & W. 177; Smith v. Iron & Steel Co., 208 Pa. 462; Canfield v. Johnson, 144 Pa. 61.

There was no ratification by appellants of the terms of the profit-sharing transaction between their partner, Grant, and appellee, McEvoy: Gunster v. Scranton, etc., Co., 181 Pa. 327.

Appellants had no knowledge of the terms of the profit-sharing agreement and settlements under it between their partner, Grant, and appellee.

Appellants are not chargeable with knowledge of the terms of the profit-sharing agreement and settlements under it between their partner, Grant, and appellee: Chester S. Dist. Audit, 301 Pa. 203; Bangor & Portland Ry. v. Slate Co., 203 Pa. 6; Brown v. Bank, 288 Pa. 478; Am. Car & Foundry Co. v. Water Co., 221 Pa. 529; Reifsnyder v. Dougherty, 301 Pa. 328.

*J. W. McWilliams,* with him *Charles S. Wesley,* for appellee.—Great weight will be given to a referee's findings of fact, if he saw the witnesses whose testimony is relied on to sustain the findings: Foulk v. Hampton, 299 Pa. 272; Belmont, etc., Co. v. Heist, 300 Pa. 542, 547; Werner v. Hillman, etc., Co., 300 Pa. 256, 259.

From the amount due plaintiff, defendants are not entitled to deduct any portion of their general overhead charges.

The agreement between plaintiff and defendant Grant, acting for defendant partnership, was within the scope of Grant's authority who was "the partner authorized to carry on the business of the partnership with the outside world": Canfield v. Johnson, 144 Pa. 61.

Appellants knew that the firm was engaged in the joint transactions with plaintiff, and at no time attempted to repudiate the agreement until after this proceeding was started: Mundorff v. Wickersham, 63 Pa. 87; Hardinge v. Kuntz, 278 Pa. 232.

OPINION BY MR. JUSTICE SCHAFFER, February 2, 1931:

This is a bill in equity filed by plaintiff against Charles J. Grant, Charles A. Mory, Paul S. Mory and Enos L. Buckwalter, copartners, trading as C. J. Grant Supply Company. It sought an accounting and decree for the profits of joint adventures in the purchase and sale of secondhand materials in which plaintiff and defendants engaged. The proceeding was referred to Benjamin H. Ludlow, Esq., as referee under the provisions of the Act of May 14, 1874, P. L. 166, who recommended that defendants be ordered to pay to plaintiff the sum of $31,426.52, with interest from a date named. The referee's report was approved and confirmed by the court below, his findings of fact and conclusions of law were adopted as the findings and conclusions of the court, and judgment was entered against defendants for the sum named and interest, from which defendants Charles A. Mory, Paul S. Mory and Enos L. Buckwalter appeal. Defendant, Grant, did not appeal.

Our consideration of the oral arguments and briefs and of the record has convinced us that the case was properly and justly decided by the able referee, and that no useful purpose would be served by a review of the mass of testimony which he heard. The case is of no

value as a precedent save for a single question of law involved in it. We will as briefly as possible state the facts out of which that question arises.

McEvoy and the defendant partners were separately engaged in dealing in secondhand materials, largely the surplus stocks of pipe, valves, fittings and other similar merchandise in the hands of the United States Government resulting from the cessation of hostilities at the close of the world war. Grant was the managing partner of defendant firm and conducted substantially all of its business. The other members were engaged in other enterprises. He and plaintiff entered into an arrangement to jointly purchase merchandise to be paid for equally by plaintiff and the defendant copartnership, such of the material as could not be sold and shipped direct to purchasers from the place where it was bought, to be shipped to the defendant firm in Philadelphia, unloaded, and sold from time to time as the opportunity afforded, the account of such sales to be kept by defendants, and, upon the final disposal thereof, the profits to be equally divided between plaintiff and defendant partnership in the following way: From the total sales price there should be deducted the cost of the merchandise, the freight and handling charges and the expenses incurred in sorting and handling; the balance remaining constituted the profit to be shared. Appellants contend that Grant had no authority to enter into such a contract and that they are entitled to charge to the joint adventure a proportion of the overhead expenses of their business amounting to $17,874.26.

The referee found there was no fraud or collusion in the transactions. This being so, if the contract entered into was within the scope of Grant's duties as managing partner everything else becomes immaterial. It is argued that the appellants did not know the terms of the contract and did not consent to it, but they did know that the partnership was engaged in joint enterprises with plaintiff and could have found out all about the

contracts had they made inquiry. We are not dealing with a situation between the partners inter se, but with one between them and a third person, where the undertaking was entered into between one of themselves, who was placed by them in full charge of the management of their business. It would be most unjust to have him agree with an outsider as to what should be done and appellants get the benefit of the joint undertakings and at their conclusion to charge him with an expense which he had never contemplated or taken account of. Moreover, plaintiff had expenses of his own which he did not charge to the joint account. The referee in this connection says, "It is quite apparent that McEvoy matched his ability to hunt up surplus material to be purchased for the joint account and his ability to sell some of it against the defendants' ability to warehouse and handle the same pending sale." It is also worthy of remark that while appellants would charge plaintiff with a proportion of their entire warehouse expense, as though they had warehoused all the material shipped to Philadelphia, a large part of it was not stored in their warehouse at all, but in property of the Pennsylvania Railroad Company without any cost to them.

As to the authority of Grant to act for and bind the partnership by the contract here in question, the referee found: "It is quite obvious that the actual business of the defendant copartnership was, so far as the outside world was concerned, carried on from its inception until October, 1924, by the defendant Grant, and, that the copartners had either knowledge or means of knowledge and that to the extent to which they lacked either or both they had subsequent knowledge of what had taken place and ratified the same." The referee and the court below found that all of Grant's acts were within the apparent scope of the partnership business. If a referee's findings of fact have sufficient evidence to support them and have been approved by the court below, the Supreme Court will approve them also: Foulk v. Hamp-

ton, 299 Pa. 272. What was said in Canfield v. Johnson, 144 Pa. 61, 78, fits the situation before us: "It was a contract fairly in the line of their business, and therefore within the authority of a partner. Moreover, Johnson, as a partner, was the authorized agent of the firm for the making of contracts within the scope of the firm's business, and we are of opinion that the contract was within that class." The authorities are summed up in 47 C. J., page 831, section 294, where it is said, under the head "Power of Managing Partner": "The sole management of a partnership business......may by agreement be vested in one partner; and where the conduct of the firm business, or of a particular department, is left entirely to one of the partners, as manager, he is thereby vested with power of carrying on such business without consulting his copartners and of binding them by all transactions in the course of the partnership business, even though a particular transaction apparently is not needed to carry on the business."

The assignments of error are overruled and the decree of the court below is affirmed at appellants' cost.