JOHN R. FENWICK, TRADING AS UNITED BEAUTY SHOPPE, PROSECUTOR, v. UNEMPLOYMENT COMPENSATION COMMISSION OF NEW JERSEY, DEFENDANT.

Argued January 18, 1944—Decided September 6, 1944.

Before Justices PARKER, HEHER and PERSKIE.

For the prosecutor, *Jacob M. Goldberg.*

For the defendant, *Charles A. Malloy (Herman D. Ringle,* of counsel).

The opinion of the court was delivered by

HEHER, J. The determinative question here is whether one Arline Chesire was on January 1st, 1939, a partner or an employee of prosecutor in the conduct of a beauty shop in the City of Newark. If the latter was her status, then prosecutor was an employer within the intendment of the *Unemployment Compensation Law. R. S.* 43:21–1, 43:21–19 (h) (1). The Unemployment Compensation Commission found that such was the case. We deem this to be an erroneous appraisal of the relationship.

Prosecutor established the business in question in November, 1936. In the latter part of 1937, or the forepart of 1938, he employed Chesire as a "cashier and receptionist," at a weekly wage of $15. Sometime after the commencement of the employment, Chesire complained that her compensation was inadequate; and prosecutor testified that, in order to retain her services, they agreed that she should thereafter share in the profits of the enterprise. The inquiry is as to the nature of the relationship which thereby came into being.

The agreement was reduced to writing with the aid of counsel, and signed by the parties on December 12th, 1938. It is styled an "Agreement of Partnership." It is therein recited that prosecutor "is desirous of entering into a partnership with" Chesire; and thereby the parties agreed to "associate themselves into a partnership, to commence on January 1st, 1939." The "business of the partnership" was stated to be the operation of the beauty shop theretofore conducted by prosecutor in the City of Newark. It was further stipulated that the *"firm name* shall be that as provided for in the lease agreement between Florence Meola, trading as United Beauty Shoppe, and John R. Fenwick, namely United Beauty Shoppe;" that "No capital investment shall be made" by Chesire, and that the "control of the management and operation shall be vested in" Fenwick; that Chesire "is to act as cashier and reception clerk," at a salary of $15 per week, and that "At the end of each year she is to receive in addition a bonus of 20% of the net profits, if the books of the partnership shall warrant a payment of such bonus of 20%," after Fenwick "shall have received his salary, expenses and other incidentals;" that "All liability shall be limited" to Fenwick, and that Chesire "shall not be liable as between the partners for any debts contracted by the partnership;" that "each party shall devote all of his time and attention to the business of the partnership, and shall not during the term of this partnership, either directly or indirectly, engage in any other business;" that the "salary" of Fenwick "is to be $50 per week, but he is in addition, to receive at the end of the year, a bonus of 80% of the net profits, as determined at the end of the year, and after deducting all salaries, expenses and incidentals, incurred in the management and operation of the business:" and that "This partnership shall continue, until terminated by either party, upon the giving of ten days notice to the other." The relationship, whatever it was, was terminated by mutual consent in the latter part of 1941.

The partnership relation is essentially contractual. It is grounded in the mutual assent of the parties, express or implied. Partnership liability in favor of third persons may arise by estoppel, but in such case there is no partnership in

fact or in law. The manifested intention of the parties is the primary consideration in resolving whether there is a partnership or a different legal relation. The parties are free to establish by contract such relation as they may deem appropriate to serve their own interests, provided it is not designed to effect an illegal object or otherwise to offend against positive law or sound public policy. Of course, a legal status dependent upon mutual consent may have, as a matter of law, certain attributes and incidents irrespective of the agreement of the parties.

The Uniform Partnership Law defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." *R. S.* 42:1-6. Rules are therein laid down for determining the existence *vel non* of a partnership. Among others, it is provided that the "receipt by a person of a share of the profits of a business is *prima facie* evidence that he is a partner in the business," but that "no such inference shall be drawn if such profits were received in payment," *inter alia,* "as wages of an employee." *R. S.* 42:1-7. If the profit-sharing is merely by way of measuring compensation for services, the status is not one of partnership. The act also declares the rights and duties of the partners to one another, "subject to any agreement between them." *R. S.* 42:1-18. Unless the "contrary intention appears," property acquired with partnership funds is partnership property. *R. S.* 42:1-8. See, also, *section* 42:1-25 (2) (a).

Thus, the inquiry here is whether the relation created by the integration was one of partnership or employment merely. It is frequently difficult to fix the category. There is no formula which will automatically resolve every case. Each is governed by the particular circumstances. And the parties' own characterization of the relation is not for obvious reasons conclusive. They may call it one thing, while they stipulate for the elements of another. It is the essence that controls. In the ultimate analysis, the question is whether the parties have revealed an intention to assume the relationship which the law denominates a co-partnership, or to provide for tenure of employment merely or for a common adventure lacking the

elements of a partnership. There is sometimes seeming conflict between the expressed general intention and the specific provisions of the contract. As in the case of other contracts, the judicial function is to ascertain and effectuate the probable intention of the parties as disclosed by the language of the integration. The standard of interpretation of an integrated agreement is the meaning that would be attached to the integration by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the writing, other than oral statements by the parties of what they intended it to mean, except where it produces an ambiguous result, or is excluded by rule of law establishing a definite meaning. *Corn Exchange National Bank and Trust Co.* v. *Taubel,* 113 *N. J. L.* 605. Interpretation is not to be confused with revision. The courts may not foist new terms upon the parties. When the intention is found, there is an imperative duty of enforcement.

Here, the integration explicitly manifests an intention to form a partnership. The writing itself is denominated an agreement of partnership. The purpose to establish that relation is declared in classic terms. The parties are described as "partners;" and the association is termed a "partnership." There are no provisions fairly serving to imply an intention at variance with this expression. The document must be viewed as a whole; and, considering the terms in relation to one another, we discern no basis for the implication of a purpose to create a mere employment relationship. We find no repugnancy between the specific provisions and the expressed declaration of partnership. There is a community of interest in the business and profits of the joint enterprise, *i. e.,* the "operation" of a beauty shop. The parties share in the profits of the business; and, by the same token, they are affected by its losses. It is not essential that each party contribute capital or stock; one may contribute his services to the common venture. And it is not requisite that the parties have joint control of the management of the business; the lack of such control by one of the parties is not conclusive of the non-existence of a partnership. The parties have equal rights in the management and conduct of the partnership

business only in the absence of an agreement otherwise. *Vide R. S.* 42:1–18. Nor is the determinative to be found in the provision exempting one of the parties from liability *inter se* for the obligations of the joint enterprise; a common liability to third persons, a legal incident of the ordinary partnership, is thereby recognized. Neither is it decisive that Chesire's share in the profits is described as a "bonus." The contention that this signifies her true relation to Fenwick was that of an employee falls when it is considered that the same term was employed in providing for Fenwick's share of the profits. Regarded in relation to the contract as a whole, these clauses import an intention to share profits as such. There is no tangible basis for a finding that Chesire's share of the profits constituted compensation for services rendered Fenwick. The contract is one of partnership in express terms; and to hold otherwise would be to consider as unmeaning words of art used under the guidance of counsel and disregard the declared will of the parties. The avowed intention and *indicia* unite in favor of a partnership. A contrary interpretation would constitute administrative and judicial interference with the fundamental liberty of contract.

There is no suggestion (and therefore no occasion to consider the question) that this agreement was but a device to conceal a mere employment relation, and thus to enable Fenwick to evade his obligation under the *Unemployment Compensation Act, supra,* or otherwise to avoid a legal duty. Indeed, the attorney for the defendant commission proved that on April 20th, 1939, Fenwick designated himself as the "individual" owner of the business in a "Status Report of Employing Unit," sworn to before one of its field investigators and filed with it; and that during the first nine months of that year, he included Chesire as an employee in his "Social Security" reports to the federal government, and paid taxes of this class computed on her remuneration. However, it reasonably appears that these certifications were due to inadvertence—unwitting adherence to the old formula. Upon such representation, made during the last quarter of the year 1939, the Government refunded these taxes as erroneously paid; and thereafter all such reports certified that the busi-

ness was conducted by Fenwick and Chesire as co-partners. Partnership income tax returns were made to the federal government for the years 1939, 1940 and 1941; also individual income tax returns listing the partners' income from the partnership. Fenwick was a resident of the State of New York; and for the same period he made individual income tax returns to that state of his income from the partnership. And, in a report made to the Federal Department of Commerce, Bureau of the Census, for the year 1939, Fenwick and Chesire were listed as the owners of the business. So far as appears, the contract was performed as written. Chesire managed the office, which included "selling the service;" and Fenwick supervised the workshop.

The case of *Scott* v. *Miller*, 22 *N. Y. Supp.* (2d) 981; *affirmed*, 285 *N. Y.* 760; 34 *N. E. Rep.* (2d) 910, is typical of the cases *contra* cited by defendant. There, the holding was that, in the particular circumstances, the terms were in the main "more consonant" with the theory of one party's "ownership and operation of an enterprise for profit for himself than of a sharing of the nature typical of partnership," and "of a guaranty of wage to the other members of the partnership;" and that it was a case "of an owner attempted to be clothed in partnership form." Upon due consideration of the written expression of the parties in the light of the attending circumstances, we cannot say that such was the case here.

The judgment of the Compensation Bureau is reversed, without costs.