Argued October 30, 1950; remanded March 14, petition for rehearing denied April 11, 1951

## CLAUDE *v.* CLAUDE
228 P. 2d 776
230 P. 2d 211

*P. J. Gallagher,* of Ontario, argued the cause for appellant. On the briefs were Gallagher & Gallagher, of Ontario.

*Robert E. Lees,* of Ontario, and Charles W. Swan, of Vale, argued the cause for respondent-cross appellant. With them on the brief was Earl Garrity, of Nampa, Idaho.

Before LUSK*, Chief Justice, and BRANDT†, ROSSMAN, HAY, LATOURETTE and WARNER, Justices.

WARNER, J.

This is an appeal from the decree entered after a hearing in the above entitled matter directed by our decision on the first appeal (*Claude v. Claude,* 180 Or. 62, 174 P 2d 179).

In that appeal this court granted defendant a divorce from plaintiff but reversed the lower court

---

\* Chief Justice when this case was argued.
† Chief Justice when this opinion was rendered.

"for failure to give the plaintiff appropriate relief under the contract of March 13, 1944," and remanded the cause for such further proceedings. *Claude v. Claude,* supra at page 85. The Mandate on that decision was filed January 6, 1947, and thereafter an accounting was had which resulted in a decree on September 7, 1949, from which the defendant now appeals and the plaintiff cross appeals.

It is necessary to an understanding of this appeal to know that the defendant, ever since the marriage of the parties in 1924, was engaged in the cattle and sheep business in southeastern Oregon in which he had the active help of the plaintiff. As a result of their mutual endeavors they had acquired substantial holdings of real property in Malheur county, Oregon and Owyhee county, Idaho, and numerous cattle and sheep, together with the machinery and equipment essential to the successful operation of an enterprise of that kind. On June 3, 1935, they executed articles of partnership for the governance of their cattle and sheep operation. The agreement of that date provided each party would contribute to the capital of the business all of his or her property "of every kind or character" but without description or references to the particular contributions of each. This partnership agreement, which we shall hereinafter refer to as the "1935 agreement," further provided that the net profits and losses should be divided between the parties as follows: two-thirds to defendant and one-third to plaintiff. It was to continue until terminated by mutual consent.

As indicated in our opinion on the first appeal, plaintiff, after a quarrel between the parties in January, 1944, established a temporary home for herself and three daughters in Boise, Idaho and thereafter

instituted a suit for divorce on January 28, 1944 in the Circuit Court for Malheur county. As stated in our first opinion: "After prolonged negotiations between the parties and their attorneys they agreed to compose their differences, and, under date of March 13, 1944, entered into a written agreement for the settlement of their property rights." That agreement, in accordance with its design, resulted in a dismissal of that suit in May, 1944.

Although they thereafter resumed marital relations, the peace effected by the reconciliation and dismissal of the divorce suit was short lived. Renewed quarreling prompted plaintiff to file another complaint in divorce on August 4, 1944, wherein she sought, among other things, specific performance of the agreement of March 13, 1944. This we shall hereinafter refer to as the "agreement of 1944." Defendant, by his cross complaint in that suit, asked to have the agreement of 1944 set aside on the ground that its execution was procured by the plaintiff's fraud. The decree of the lower court in the trial of the second divorce suit resulted in an appeal to this court wherein we denied the relief prayed for by the defendant as to the agreement of 1944 and granted the specific performance requested by plaintiff.

· The instant appeal relates solely to the character and terms of the agreement of 1944 and the lower court's subsequent decree with relation thereto. The terms of the 1944 agreement are disclosed in our first opinion only to the extent that it was necessary for the determination of the matters required by the first appeal. This appeal demands a fuller statement. We will, therefore, here summarize the provisions of that document in so far as they bear on this appeal and

later in this opinion set up in *haec verba* such of the provisions of the agreement of 1944 as may seem to merit special construction or attention. They are: (1) the cash settlement clause providing for a division of $17,000.00 to each party; (2) the declaration of ownership of plaintiff, i. e., one-third in all of the properties owned by either party; (3) the provision for the division of surplus annually in proportion to their respective ownership; (4) the creation of a future trust for three minor children; (5) the management and administration of joint properties after the date of the agreement; and (6) the provision requiring defendant's approval to all expense items other than "household necessities, medical attention, costs and expense of education."

We shall limit our review of the appealed decree to such items thereof as we feel are meritoriously challenged by either of the appealing parties, or which by reason of our own conclusions command attention or modification.

Before proceeding to examine the errors alleged by the respective parties, we digress to observe here that the record before us discloses a studied determination by the defendant to circumvent our holding that the agreement of 1944 was in force and effect. He has not only remained in full possession of all the jointly owned property from the date of that agreement to the present time and treated it and its profit as if he were the sole owner thereof, but has stubbornly refused to disclose the financial record of his stewardship during that period, and only when compelled by order of the lower court did so reluctantly, evasively and by piecemeal. A partial picture of defendant's attitude in this respect is captured from the record

which shows that since the filing of the Mandate on our first opinion, four separate orders have been served on defendant to show cause why he should not be held in contempt. Over two and a half years elapsed between the filing of the Mandate and the entry of the decree from which this appeal is taken. This delay is due in a large part to defendant's failure to produce certain required records at stated times or to his presentation of incomplete parts thereof. We marvel at the patience of the lower court and venture the opinion that this entire matter might have long since been more happily and exactly concluded had the lower court earlier imposed a penalty for defendant's obviously contemptuous conduct instead of indulging him with further delay. Even then, the records finally produced by defendant, and acted upon by the court, were not as full as we have reason to expect from a defendant, who had exclusive possession of the same. Certainly, they were not of the kind nor in the form calculated to produce the accounting result that the plaintiff is entitled to receive. We can well understand why the court and plaintiff, after defendant's repeated delays, were impatient for a termination and ready to accept what they then had in order to hasten that desired end, even though a better and fuller record might have inured to plaintiff's advantage. Notwithstanding plaintiff's and the lower court's apparent eagerness to be rid of the matter and have it over, our own labors have been greatly enhanced and our conclusions delayed by this unconscionable attitude and delay on the part of the defendant.

When we examine the record here, we find that there was apparently no effort made in the court below to first determine the true legal relationship of

the parties as to the business administration of their jointly owned properties under the agreement of 1944. The decree discloses some of the elements of a partition between cotenants and some of the elements of a dissolution between copartners, but there is nothing in the record here to tell us precisely what theory the court below adopted in arriving at its conclusions. We think the agreement of 1944 must first be examined to determine that question and after the true answer is discovered, grant relief accordingly.

Defendant assumes that the court has proceeded on the theory that the defendant holds the property as a trustee. This has its genesis in defendant's construction of the agreement of 1944. He claims that the relationship of the parties after March 13, 1944 "was not that of partners in the sense that a remaining partner is recognized as a trustee of the assets for the withdrawing partner." He takes the position that the agreement of 1944 was solely for the purpose of effecting a property settlement between the parties and did not contemplate a continuing partnership relationship.

Before proceeding further, it is well to here clarify one matter in which both parties are in apparent error. Notwithstanding the more or less identical assertions to the contrary found in the briefs of both plaintiff and defendant, this court did not in its previous opinion construe the agreement of 1944 with reference to its partnership character. Both parties quote the following words from page 82 of that opinion: "It is sufficient for present purposes to say that it purports to create a partnership between the plaintiff and the defendant * * *." Both parties in their respective arguments assume that it refers to the so-called "Property Settlement Agreement" of 1944; but if they will

note the sentence in the same paragraph immediately preceding the sentence above quoted, they will discover that the agreement referred to by the court was "the previous agreement * * * entered into under date of June 3, 1935." It follows, therefore, that neither the plaintiff nor the defendant can garner any help from our former opinion in that respect by way of giving support to their several viewpoints in this appeal.

Therefore, we are now for the first time required to reexamine the property agreement of 1944 to determine whether or not it provided for a continuing partnership between the parties. We use the words "continuing partnership" advisedly because we are not unmindful that as of June 3, 1935, while the parties were living in marital peace and amity, they entered into a partnership agreement wherein they pooled all of their assets and agreed to a division of profits and losses according to their respective interests in their capital contributions to the joint enterprise, i. e., one-third to plaintiff and two-thirds to defendant.

So far as revealed by the record, the 1935 agreement continued in full force and effect to and until the making of their new agreement on March 13, 1944.

■ Although the agreement of 1944 was denominated a property settlement agreement, we are not bound to accept this designation as being conclusively definitive of its true legal classification or of the character of the relationship created between the parties thereunder. *Hanthorn v. Quinn*, 42 Or. 1, 8, 69 P. 817. We look to the substance of the writing and read it by its four corners. *Devereaux v. Cockerline*, 179 Or. 229, 240, 170 P. 2d 727. It is the essence that controls. *Fen-*

*wick v. Unemployment Compensation Commission,* 132
N.J.L. 185, 38 A. 2d 849.

It is true that the agreement of 1944 is declaratory
of certain property rights and certain obligations re-
lating to the family relationship which are ordinarily
found in what is commonly called a property settlement
agreement when made by parties looking prospectively
to a separation or divorce, but the instant agreement
is far more comprehensive than an ordinary property
settlement agreement. The unique character of this
so-called property settlement agreement is that it con-
templates a continuous operation of their joint prop-
erties as a joint enterprise. So far as it relates to the
conventional property settlement feature, it in essence
provides: (1) for a division between the parties of
"moneys, securities and property now on hand." This
appears to us to be no more nor less than an account-
ing to the date thereof and partial distribution of
partnership earnings which accrued prior to the date
of the agreement. (2) It declares that plaintiff "is the
owner of an undivided one-third (1-3) interest in and
to all of the property, real, personal and mixed, and
wheresoever situate, now held, owned or possessed by
the parties, or either of them." This is but a reflec-
tion of the division of the profits which the parties en-
joyed under their partnership agreement of 1935. (3)
It contemplates the possibility of future happy accord
between the plaintiff and defendant by providing that
if the "parties resume their marital life and continue
to live together as husband and wife for the period of
seven years" after the date of the agreement, plain-
tiff's share in the property shall then be increased by
an equal division of the property between them; and
(4) It also provides for the creation of a trust fund

in the future for the use and benefit of their minor children by joint contributions of the parties.

In addition to the foregoing provisions which relate to what may be more properly called the property settlement character of the agreement, the following provisions were made with reference to the future operation and administration of their jointly owned property: (1) "It is agreed by and between the parties hereto that any surplus earnings, not needed for the operation, shall be divided between the parties, once each year, in proportion to their respective interests in said property," that is, one-third to plaintiff and two-thirds to defendant. (2) "That the parties shall use their best efforts and skill in the management of such business or industry as they may engage in, and shall carefully and frugally conduct said business to the end and purpose that the capital shall not be unduly risked or unnecessarily depleted." The "business or industry" of the parties referred to was, and throughout their entire marital life of twenty years prior to March 13, 1944, had been, as declared by their partnership agreement of 1935, a "general livestock and farming business, buying, selling, dealing and operating all property necessary and incidental to the carrying on of said livestock and farming business," and the use of all their real property to that end with special emphasis on the raising and selling of cattle, sheep and wool. It so continued after March 13, 1944. (3) "That each party shall be entitled to receive full and complete information of the condition of said business at all reasonable times"; and (4) That "all expenses and purchases shall have the approval of the Husband prior to being incurred or made," except "household

necessities, medical attention, costs and expense of education.''

In our inquiry to determine the intent of the parties, we find the following interesting contribution from the plaintiff, made in response to counsel's inquiry relative to the execution of the agreement of 1944:

"Q. Mrs Claude, did you and Mr. Claude have any conversation relative to the division of the property aside from the conversation you had with your attorney?

"A. We discussed things, yes, from all angles, first one way and then another, like a husband and wife will, especially when there is as much involved as there was. Mr. Claude tried to tell me if we made any division it would be detrimental to each of us, running two outfits and having so many expenses and if we sold the property at that time to make any cash division it would be at a great sacrifice because probably another year on it would really help out financially, wouldn't be such a sacrifice. *That was why we drew up the agreement so we could run it together, keep it together and operate it without any change whatsoever other than on paper.*" (Italics ours.)

The defendant offered no evidence in contradiction. Recalling as we do that the partnership agreement made by the parties in 1935 was still in force and effect as of the date of the so-called property settlement agreement, we are of the opinion that the parties, by the agreement of 1944, had in mind a continuing of the partnership relationship "without any change whatsoever other than on paper," that "paper" being the very instrument we are now construing. These changes, as indicated by the quoted portions of the agreement relating to the joint enterprise, were slight indeed and did not vary nor destroy the fundamental concept of

the then existing partnership. It also appears that generally the business and administration of their assets after March 13, 1944, continued to follow the partnership pattern which prevailed prior to that date.

A partnership is the product of a voluntary contract, express or implied. *Preston v. State Industrial Accident Commission,* 174 Or. 553, 563, 149 P. 2d 957; 40 Am. Jur., Partnership, 136, § 16. In the Preston case, the court said at page 563:

> "The prevailing view is that no arbitrary test is conclusive, but that the existence of a partnership depends substantially upon the expressed legal intent of the parties: what is the actual character of the relationship intended in point of fact and does that relationship amount to a partnership in point of law?"

Not only does the intent of the parties govern but such intent will be determined from the effect of the whole contract, regardless of special expressions. *Devereaux v. Cockerline,* supra at page 241; *Flower v. Barnekoff,* 20 Or. 132, 144, 25 P. 370, 11 L.R.A., 149.

Section 79-201, O.C.L.A., defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit," and we have held that, as so defined, "coownership of a business, though not necessarily of specific property, is of the essence." *Preston v. State Industrial Accident Commission,* supra at page 565. In determining whether a partnership exists, § 79-202, O.C.L.A., applies certain tests, one of which is: "The receipt by a person of a share of the profits of business is prima facie evidence that he is a partner in the business * * *." In *First National Bank of Eugene v. Williams,* 142 Or. 648, 660,

20 P. 2d 222, this court also laid down as a general rule and as an additional test that:

"* * * in order to constitute a partnership inter se, the community of interest between the parties must be of such a nature that it makes each member a coprincipal and an agent of all the members in the business with joint authority or right in the administration, control or disposal of the business or its property."

Also see *Preston v. State Industrial Accident Commission,* supra at page 563.

■ When we apply the foregoing rules and tests to the agreement of 1944, we are impelled to the conclusion that it created a partnership relationship between the parties.

■ The defendant calls our attention to the language of the agreement reading, "All expenses and purchases shall have the approval of the Husband prior to being incurred or made," and argues that this destroys the element of "community of interest" as defined by *First National Bank of Eugene v. Williams,* supra. With this as a premise, he also claims that it indicates that no partnership was created or intended. We can not join in these conclusions for we think that the language referred to by defendant is not at variance with the definition of "community of interest" as heretofore given by this court.

■ The definition of "community of interest" does not inhibit partners from including in the articles of partnership restrictions on their authority as agents of the firm. 40 Am. Jur., Partnership, 229, § 141. The character of the business, the relative experience or training of the parties, and considerations of efficient management frequently dictate the wisdom of a division of administrative authority and responsibility be-

tween the partners in order to better effectuate the objectives of the joint enterprise. Where other elements necessary to establish a partnership are present, it is not necessary that there should be joint control or that the rights of the parties to the control of the business should be equal. *Commissioner of Internal Revenue v. Olds,* 60 F. 2d 252, 254, 15 B. T. A. 560; *Lyon v. MacQuarrie,* 46 Cal. App. 2d 119, 115 P. 2d 594; *Davidson v. Shaffer,* 153 Kan. 661, 113 P. 2d 90; *Fenwick v. Unemployment Compensation Commission,* supra. Nor does the fact that one of the parties to the agreement is made manager of the enterprise destroy the concept of "community of interest" or prevent the status of the partnership from existing. *Hardymon v. Glenn,* 56 F. Supp. 269, 274; *McAlpine v. Millen,* 104 Minn. 289, 116 N. W. 583; *McEvoy v. Grant,* 302 Pa. 539, 153 A. 763.

A substantial portion of defendant's brief is premised upon the proposition that the plaintiff "voluntarily withdrew from the operation some three and a half months after the agreement was signed," establishing August 1, 1944 as the time "when the plaintiff left the enterprise and sued for divorce." He argues that plaintiff is not entitled to receive any of the profits made by defendant after "she abandoned the agreement." Defendant's position in this respect is not tenable. It flies in the face of the record. There it is disclosed that plaintiff in her complaint sought specific performance of the very agreement defendant claims she abandoned by the filing of her complaint. He ignores, too, the Mandate of this court on the first appeal, reversing the lower court "for failure to give the plaintiff the appropriate relief under the contract of March 13, 1944." Moreover, through the medium of defendant's brief on this appeal we learn for the first time of defendant's claim that plaintiff voluntarily

withdrew from the agreement in August, 1944. Defendant's theory throughout the trial and here on the first appeal then rested on his answer alleging the subsistence of the agreement of 1944 and praying for its cancellation on the ground of fraud attending its execution. Under the circumstances, we cannot accede to the suggestion that an accounting for the profits arising out of their joint enterprise must be confined to the period between March 13, 1944 and August 1 of the same year.

 Holding, as we do, that the agreement of 1944 continued a partnership relation between the parties which was not dissolved in August, 1944, we are, nevertheless, prompted by the earnest urging of defendant's counsel to discover, if possible, a dissolution date for the relationship created, if it was not as contended by the defendant. The partnership contract of 1935 provides for dissolution of the partnership by "mutual agreement or operation of law," but the document of 1944 has neither a terminal date nor does it supply a method for dissolution. On the other hand, we observe from the record before us, particularly as indicated by the briefs of the respective parties, that they approached the accounting had in the lower court as if it were a final accounting on dissolution. It is apparent to us from the character of the court's decree that it, too, treated the accounting as final in the sense that there was a dissolution of the then existing business relationship which had subsisted between the parties prior to the date of the court's decree. This is emphasized by the provision of the decree which, as hereinafter pointed out, attempts to give to plaintiff a money judgment against defendant for the value of her one-third interest in the personal property as of December 8, 1948. Although defendant contends that plaintiff

dissolved their business relationship by her act in filing for divorce in August, 1944, and the lower court adopts December 8, 1948 as a terminal date for the final accounting, both parties acquiesce in the premise that they were engaged in a final accounting in the proceedings had below. In the absence of an affirmative showing to the contrary, we therefore adopt December 8, 1948 as the date of the dissolution of the partnership.

■ We have heretofore indicated that defendant claims his responsibility to account is limited as of a date in August, 1944. His argument in support of that proposition indicates an erroneous belief that a dissolution of their business association as of any given date would bar plaintiff from any participation in profits accruing thereafter. Even if there had been a dissolution on the date contended by the defendant, or at some time subsequent, the partnership would, nevertheless, continue in existence for the purpose of winding it up and for a final accounting. Neither partner would be deprived of the right to participate in the profits, if any, accruing during the liquidation period. *McIver v. Norman,* 187 Or. 516, 205 P. 2d 137, 213 P. 2d 144; *Carrey v. Haun,* 111 Or. 586, 594, 227 P. 315 and cases there cited. Any accounting between the parties must necessarily include all properties acquired by either party through the use of partnership assets subsequent to March 13, 1944. *Fouchek v. Janicek,* 190 Or. 251, 225 P. 2d 783; § 79-404, O.C.L.A.

■ As a practical matter, it is quite immaterial so far as ultimate results are concerned whether we adopt August 2, 1944 (the date of filing plaintiff's complaint) as the date of the dissolution of the partnership or December 8, 1948, which we have established. This is true because, as we have pointed out, the administration of the partnership property subsequent to either date

entitles the plaintiff to participate in any profits accruing during the period incident to winding up the partnership affairs. If the period for that purpose has been unduly prolonged, the defendant must assume the entire blame for that result and cannot exonerate himself from a full and faithful accounting by reason of the strained relations existing between the parties at any time subsequent to the making of the agreement of 1944.

■ The obligations mandated by § 79-404, O.C.L.A., as well as "the obligation of partners to act with the utmost candor and good faith in their dealings between themselves is not lessened by the existence of strained relations between them or the existence of any condition which might, in and of itslf, justify the firm's dissolution. The fiduciary obligations of a partner remain until the relationship is terminated." *Fouchek v. Janicek,* supra.

■ There are three separate steps necessary for the complete extinguishment of an existing partnership. They are (1) Dissolution, (2) Winding up, and (3) Termination. *Duncan v. Bartle,* 188 Or. 451, 468, 216 P. 2d 1005.

Having concluded that the agreement of 1944 creates or continues a partnership between the parties, we now turn our attention to the accounting made pursuant to the Mandate on the first appeal and had between the parties for the year 1944 subsequent to the date of that agreement and for the years 1945 to 1948, inclusive, confining our attention, however, to the alleged errors in the accounting raised in defendant's brief and plaintiff's brief on cross appeal.

■ Aside from the judgment in favor of plaintiff for $12,000.00 hereinafter more particularly referred to,

the court below gives her judgment against defendant in the further sum of $17,708.21. In view of our reasoning that the parties are partners under the agreement of 1944, this judgment cannot be sustained. The court's findings instruct us that this sum was determined in the following manner: The lower court properly found from defendant's figures that the net operating profit for the years 1944 to 1947, inclusive, was $33,518.60. It also correctly found that from that net operating fund, $27,568.97 was disbursed for the purchase of new machinery, certain construction charges, real estate contract payments and promissory notes (which were unpaid on March 13, 1944). These items are particularly described in the court's finding XI. These expenditures reduced the net operating cash to $5,949.63 as of December 8, 1948. By the same finding, the court also found that, in addition, the parties were joint owners of machinery of the value of $5,825.00 and livestock of the value of $41,350.00, likewise itemized in that finding. These items of personal property, that is, cash in the amount of $5,949.63 and the machinery and livestock in the amount of $47,175.00, represent a total value of $53,124.63. We accept these figures as correct but think the court erred when it gave the plaintiff a money judgment for one-third of that amount in the sum of $17,708.21. Based on the premise of a partnership relationship and a consequent partnership accounting, the foregoing items of cash in the amount of $5,949.63 and the machinery and livestock of the value of $47,124.63, should be shown in the accounting of December 8, 1948 as partnership assets in any financial statement of that date. When this is done, the gross holdings of the partnership on that date for accounting purposes should be represented by its real property, its

personal property above referred to and such leases and equities in contracts as it then owned (which the record shows were items of partnership property, though not itemized or particularly described). In view of the fact that the defendant has at all times had the exclusive possession of these personal property assets, his partnership share on termination should be surcharged with the value thereof, as determined by the lower court, to the extent that he is unable to produce or account for the same after December 8, 1948.

■ Our conclusions above with reference to the disposition of the personal property in the manner indicated are based primarily upon the well known rule that partners do not, as individuals, own any specific part of the firm property. The interest of a partner in the firm assets is the share to which he is entitled after claims against the firm are satisfied and the equities and accounts, as between the partners, adjusted. *Preston v. State Industrial Accident Commission,* supra, at page 564; *First National Bank of Eugene v. Williams,* supra, at page 660; 68 C.J.S., Partnership, 525, § 85.

By § 79-503, O.C.L.A. (Uniform Partnership Law) the nature of a partner's interest is more succinctly defined as follows: "A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property." Such a holding is by the partners in trust for the payment of the partnership debts. *Re Pittock's Estate,* 102 Or. 47, 52, 201 P. 428; 68 C. J. S., Partnership, 525, § 85. It applies to both real property and personalty. *Adams v. Church,* 42 Or. 270, 70 P. 1037, 95 Am. St. Rep. 740, 59 L. R. A. 782. When a partner is a coowner with his partners of specific partnership property, he is said to hold it as

a tenant in partnership (§ 79-502, O. C. L. A. (Uniform Partnership Law)) and the tenancy is known as a tenancy in partnership. *Webber v. Rosenberg,* 318 Mass. 768, 64 N. E. 2d 98.

■ No division in kind can be made between the partners on dissolution until all partnership creditors have been first paid, and these must be paid in the order set forth in § 79-612, O.C.L.A. This section, so far as it is pertinent, provides:

"In settling accounts between the partners after dissolution, the following rules shall be observed, subject to any agreement to the contrary:

"(a) The assets of the partnership are:

"(1) The partnership property;

"(2) The contributions of the partners necessary for the payment of all the liabilities specified in clause b of this paragraph.

"(b) The liabilities of the partnership shall rank in order of payment, as follows:

"(1) Those owing to creditors other than partners;

"(2) Those owing to partners other than for capital and profits;

"(3) Those owing to partners in respect of capital;

"(4) Those owing to partners in respect to profits.

"(c) The assets shall be applied in the order of their declaration in clause a of this paragraph to the satisfaction of the liabilities."

In the foregoing comment on the impropriety of the court's judgment for plaintiff in the amount of $17,-708.21, we accepted as complete and correct the court's calculations producing the figure of $33,518.60 (the net operating profit for the years 1944 to 1947, inclusive) which amount we leave undisturbed; but in

arriving at that amount the lower court made no inclusion of a profit or loss figure for the partnership operations for the year 1948, although it closed the accounting as of December 8, 1948. The court, in explaining this, says:

"* * * at the close of the taking of the testimony of the defendant on December 8, 1948, the defendant while on the witness stand promised to furnish to this court within two weeks from that time a full, true and complete statement of his receipts and expenditures in the management and use of the properties belonging to the plaintiff and defendant during the year 1948, but that the defendant has failed and refused to so furnish this court with any such statement. This court, therefore, can only conclude that the operation by the defendant of the properties belonging to the plaintiff and defendant showed neither a profit nor a loss during the year 1948."

This conclusion was made notwithstanding that the defendant testified he had received the sum of $19,995.61 in 1948 from the sale of partnership wool, lambs and ewes. This figure was never taken into the accounting reflected by the decree. At another place in the court's findings it is said:

"That the defendant has at all times since March 13th, 1944, had the exclusive possession, control and management of all properties belonging to the parties hereto, and has been in possession and had knowledge of all facts relative to the same, but the defendant has at all times been reluctant and evasive in furnishing this court with any detailed information relative to said properties."

*Carrey v. Haun,* supra, was a suit for an accounting, winding up the affairs of a partnership. There we said at page 596: "The principal accounts of the firm

were kept by the defendants and it becomes their duty to make a clear statement of their transactions affecting the firm.''

Under the circumstances, we feel that the lower court was overindulgent in giving the defendant the benefit of its ruling with respect to the profits and losses for the year 1948. It in effect suffers the defendant to profit by his own negligence.

■ We think the lower court should have exhausted first all of its coercive authority before closing the 1948 operating accounts; and failing thus to obtain the required records and information, it should have exercised its legal prerogatives to judicially determine the same without such aid, i.e., to resort to the best evidence obtainable to ascertain the true state of the account or to make an estimate when the books, checks or other evidentiary financial data furnish a basis for a reasonably accurate estimate and in so doing, resolve any doubts against the partner who had charge of the books and accounts or the duty of keeping them. 68 C.J.S., Partnership, 970, § 432.

Were it not for the fact that other considerations will compel us to remand this matter for further attention in the lower court, we would unhesitatingly apply the foregoing rule of estimate here, but it is a rule which should be exercised with caution and only after every other opportunity to obtain the essential information has been unsuccessfully tried.

We will, therefore, direct that the subject of the operating income and operating expenses for the year 1948 be reopened and the defendant required to supply the essential information which will enable the lower court to more accurately determine whether the partnership enjoyed a profit or sustained a loss for that

year. In the event that an operating profit is revealed, then it should be added to the previously determined cash amount of $5,949.63; and if it proves to be a loss figure, then such amount should be subtracted from $5,949.63 and the resultant figure should appear as the partnership's cash asset as of December 8, 1948.

■■ Defendant complains that the circuit court erred in not allowing him credit in the accounting for money which, as he says, was "necessarily borrowed in caring for the partnership property." We are persuaded that the court did make due allowance for all funds borrowed by defendant in so far as it was properly disclosed that such borrowed monies were expended for the use and benefit of the partnership and that it properly excluded defendant's claimed indebtedness on notes to the Idaho First National Bank at Caldwell in the alleged amount of $24,000.00 No amount of this kind or any part thereof is reflected in defendant's statement of receipts nor is it identified as having been expended in any way for the benefit of the partnership. Indeed, defendant's financial statements and testimony are to the effect that the income produced by the operation not only paid the expenses of the business but left a very substantial margin of profit. Defendant was given ample opportunity to demonstrate to the court that this $24,000.00 had been borrowed for and was used by the partnership. This he failed to do. He gave no evidence with reference thereto except his very general statement to the effect that he "believed" that he was then indebted to the Caldwell bank "around $24,000.00." He offered no independent proof that there was any then subsisting debt of any kind. In 47 C.J., Partnership, 776, § 215, it is said: "Reimbursement will not be allowed for expenses * * * for

which the partner refused to account clearly." In 68
C.J.S., Partnership, 981, § 437, we find it said:

"* * * if the right to credit for any par-
ticular item is disputed, such credit may be allowed
only where it is shown that the expenditure was for
firm purposes, and only to the extent that the pay-
ment was reasonable and proper."

██ ██ Through the decree we learn that the parties
are the owners of substantial parcels of real property
situated in Owyhee county in Idaho. We are not ap-
prised how the titles to these lands are reflected in the
records of that state, except for the general statement
found in the decree to the effect that "the record title
to a portion of said lands [is] standing in the name of
the defendant, Ameil Claude and the remainder of said
lands [is] standing in the name of the plaintiff, Blanche
Claude and the defendant, Ameil Claude." The court's
decree with reference thereto has no value except to
declare that the parties own said property and by rea-
son thereof it is subject to the provisions of the agree-
ment of 1944. We are of the opinion that the respec-
tive interests of the parties in the Idaho property, sub-
ject, of course, to the claims of the partnership, should
be made a matter of appropriate record in that state
by the exchange of appropriate conveyances. The court,
we know, is without power to act directly upon the
titles, but it is well settled that in a proper case equity
may enter its decree *in personam* and thereby accom-
plish indirectly the desired result. See 4 Pomeroy,
Equity Jurisprudence (4th ed.) 3402, § 1437; 30 C. J. S.,
Equity, 441, § 82; 27 C.J.S., Divorce 1287, § 330.

*Williams v. Williams*, 83 Or. 59, 162 P. 834, was a
suit which involved an attempt of a California court to
act directly with respect to certain lands situated in

Oregon. In holding such action by the California court void, this court said at page 62:

"No judgment of a court of another jurisdiction can have any effect *per se* upon the title to land. The only way in which the conveyance of the land beyond the jurisdiction of the court can be effected is by a decree in equity operating upon the person so as to coerce the party."

We now turn to a consideration of certain matters arising out of the agreement of 1944 which are outside of the partnership relationship. The defendant calls our attention to the provision of that agreement relating to the creation of a trust for the benefit of the minor children of the parties. He asserts that this "created an express trust" which in turn "creates a lien on their respective estates," (meaning a lien on the properties of plaintiff and defendant) and he asks that their children "be protected by adequate provisions to insure the security to the minors." Defendant also argues that this provision relating to a trust negatives the existence of a partnership under the agreement of 1944. All of these propositions are without merit.

The sole provision in the agreement of 1944 touching upon a trust reads as follows:

"It is further agreed by and between the parties that a trust fund shall be created in some suitable trust company to be agreed upon by the parties, for the education, nurture and care of Eugene Claude, Colleen Claude, and Jacquolyn Claude, minor children of the parties, and that each of the parties hereto shall contribute to said trust fund in the proportions of one-third (1/3) from the Wife and two-thirds (2/3) from the Husband, for any contributions made within the period of seven years from the date of this Agreement, and thereafter the

contributions shall be in the proportion of one-half (1/2) from each of the parties until the total trust fund hereinafter agreed upon shall have been accumulated; the terms, conditions, and amount of such trust fund to be agreed upon by the parties hereto.''

 The foregoing is a severable and divisible covenant of the agreement of 1944. *Southwell v. Beezley,* 5 Or. 459, 462; 17 C.J.S., Contracts, 785, § 331. Where an essential element is reserved for future agreement of both parties as in the foregoing provision, the present promise, although sufficiently definite, can give rise to no legal obligation until such future agreement is accomplished. *Reed v. Montgomery,* 180 Or. 196, 219, 175 P. 2d 986.

In 1 Scott, Trusts, 162, § 26, it is said:

"If an owner of property declares his intention to create a trust of the property in the future, or promises that he will create such a trust, whether by transferring the property to another as trustee or by constituting himself trustee, no trust is presently created. Although a manifestation of intention to create a trust is all that is needed for its creation, *it must be a manifestation of intention to create a present trust and not merely to create a trust to arise at some future time.*" (Italics ours.)

Also see *Allen v. Hendrick,* 104 Or. 202, 223, 206 P. 733; *Winters v. Winters,* 165 Or. 659, 665, 109 P. 2d 857.

There is nothing in the record here to indicate that the parties ever met for the purpose of establishing the trust which they agreed to establish. Therefore, there is nothing tangible for this or any other court to act upon at this time.

██ One of the provisions of the agreement of 1944 was that $17,000.00 should be set aside in cash to the

credit of the defendant and that plaintiff should receive a like sum, of which $5,000.00 was represented by war bonds and cash then in her possession, and the balance of $12,000.00 was to be paid to her on or before December 1, 1944. She did not receive the $12,000.00, and the circuit court correctly gave her judgment for that amount, together with interest from that date. No contention is made to the contrary, but the court, in giving the judgment, erred when it provided that it be

"* * * a judgment in rem against all personal properties and all real properties situated within the State of Oregon owned by plaintiff and defendant and against all interests in said properties owned and held by both plaintiff and defendant * * *."

The provisions of the agreement relating to that payment had no relation to the other provisions of the agreement having to do with the partnership. It was an independent promise on the part of the defendant to pay plaintiff that amount of money, and she should have judgment against him without the limitation of a lien against any particular property. One of the evil effects of that judgment in the form given was to make the same in effect a partnership debt, thereby reducing by one-third the amount which plaintiff would ultimately recover on her judgment for $12,000.00, whereas the agreement of 1944 plainly provides that that amount "shall be the sole, separate property of the Wife" and contemplates, we think, that it should be paid to her by the defendant and not the partnership.

In summary, the appealed decree is affirmed except as follows: (1) That part thereof giving plaintiff judgment for $12,000.00 with interest at six per cent per annum from December 1, 1944, is modified by making said amount a judgment *in personam* against

defendant and by eliminating therefrom the limitations of the lien of such judgment as to any particular property. (2) That part of the decree giving judgment to plaintiff in the amount of $17,708.21 is reversed. (3) Those provisions of the decree which declare the interests of the parties in real property should be modified as follows:

(a) As to the parcels situated in Oregon, all reference to the judgments given in favor of plaintiff should be eliminated;

(b) As to all parcels situated in Oregon or Idaho which were owned by plaintiff on September 7, 1949 (the date of the decree of divorce herein) there should be a determination that the respective moieties of the parties are as follows: two-ninths to plaintiff and seven-ninths to defendant (see *Claude v. Claude,* supra at page 85) as tenants in partnership (§ 79-502, O.C. L.A.);

(c) As to the parcels situated in Oregon or Idaho acquired by either of the parties with partnership funds subsequent to September 7, 1949, there should be a determination that the respective moieties of the parties are as follows: one-third to plaintiff and two-thirds to defendant as tenants in partnership.

(4) That part of the decree which subjects "all properties, real, personal and mixed situate within the State of Oregon" to the lien of judgments in favor of plaintiff is reversed, and that part thereof which declares plaintiff and defendant to be the owners of an undivided one-third and two-thirds interest, respectively, in leases and grazing rights should be modified by determining that the ownership of all personal property of every kind and description which the previous accounting reveals the parties owned in partnership

as of December 8, 1948, or since then have acquired with partnership funds, is held by them as tenants in partnership (79-502, O.C.L.A.). (5) That part of the decree which exonerates all of the property therein decreed to be owned by plaintiff from liability "for or on account of any moneys the defendant may have borrowed or otherwise obligated himself to pay" should be modified to provide that as between plaintiff and defendant, the defendant shall be solely and personally liable for the payment of any monies defendant may have borrowed or otherwise obligated himself, before December 8, 1948, to pay, and to the extent that partnership funds or property are used for the payment of such obligations so incurred by defendant, his interest in the partnership shall be chargeable with the amount thereof.

Under our holding it will be necessary to remand this cause for the following further proceedings: (1) for a further partnership accounting as to income and operating expenses for the year 1948, with the net result being added to or subtracted from the previously determined cash figure of $5,949.63, as may be appropriate, and which figure so determined shall represent the firm's cash assets as of December 8, 1948; (2) for a further partnership accounting from December 8, 1948, to a current date wherein there shall be included, as of December 8, 1948, all of the items of machinery and livestock found by the lower court to be of the aggregate value of $47,175.00 and at that value, and cash in the amount as determined in the manner above directed; (3) for a decree providing that upon approval of such final accounting, a receiver shall be appointed to take possession of all the partnership assets as shown thereby with proper powers and authority to thereafter

proceed with a winding up of the partnership and its affairs, and upon the determination thereof, to distribute the avails of the liquidation to the parties hereto according to their respective interests therein, or such other person as may be then shown to be entitled thereto; and (4) for a decree providing that the parties hereto shall exchange good and sufficient deeds or such other conveyances as the court deems proper wherein they will appear as grantees and as owners of so much of the fee to the property therein described as the court shall, in the decree, determine as their respective ownerships therein.

With the foregoing modifications the decree is affirmed and the cause remanded for further proceedings in accordance herewith.

ON REHEARING

*Gallagher & Gallagher,* of Ontario, attorneys for appellant.

*Robert E. Lees,* of Ontario, *Charles W. Swan,* of Vale, and *Earl Garrity,* of Nampa, Idaho, attorneys for respondent-cross appellant, for the petition.

Before BRAND, Chief Justice, and HAY, ROSSMAN, LUSK, LATOURETTE and WARNER, Justices.

WARNER, J.

Respondent has filed a petition for rehearing in which she represents that this court erred in applying the provisions of § 9-912, O.C.L.A., as it was before the 1947 amendment (c. 557, Or. Laws, 1947). Our first

opinion in this matter (180 Or. 62, 174 P. 2d 179) was rendered December 20, 1946 before the enactment of the amendment referred to. Under our holding then made the defendant, as the prevailing party in the divorce, was given an undivided one-third in fee of all the real estate owned by the plaintiff as of the time of the decree directed by the Mandate. The cause was remanded for further proceedings, and the decree was not entered until September 7, 1949. Subsequent to the date of our opinion in the first appeal and the entry of the decree from which the second appeal was taken, § 9-912 was amended in 1947 and now reads as follows:

"Whenever a marriage shall be dissolved or annulled, the party on whose prayer the decree shall be given and made thereby shall be awarded in his or her individual right such undivided interest in, or in severalty, such part or parts of the whole of, the real property or personal property, or both, or right, interest or estate in either or both thereof, owned by the other at the time of such decree, as may be just and proper in all the circumstances, in addition to the further decree for maintenance provided for in section 9-914."

In *Siebert v. Siebert,* 184 Or. 496, 199 P. 2d 659, we held that the 1947 amendment, having taken effect after the institution of that suit and before the entry of the decree therein, would govern the allowance of alimony and the award of property or property rights to the party on whose prayer the decree of divorce was granted.

In our opinion in the instant appeal we did not overlook § 9-912 as amended in 1947 nor our holding in *Siebert v. Siebert,* supra, and our conclusions were controlled thereby. In the exercise of the authority and

discretion accorded by the amendment, we were of the opinion that in the light of the entire record an award to defendant of an undivided one-third interest in all real property owned by the plaintiff at the time of the decree was just and proper.

The petition for rehearing is therefore denied. Appellant has also petitioned for a rehearing, which is denied.