Argued April 3, affirmed July 7, 1967

DAVIS, *Respondent, v.* DAVIS, *Appellant.*

429 P. 2d 808

*Francis E. Marsh,* McMinnville, argued the cause for appellant. With him on the brief were Marsh, Marsh, Dashney & Cushing, McMinnville.

*Thomas A. Huffman,* Hillsboro, argued the cause for respondent. With him on the brief were Huffman and Zenger, Hillsboro.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

GOODWIN, J.

Robert Davis brought suit for the dissolution of a partnership and equal distribution of its assets. The defendant, James Davis (who is no relation to Robert), contended that the association was a limited partnership and that Robert was entitled only to the return of his original investment, his undistributed share of profits, and interest thereon. From a decree in favor of Robert, James appeals.

The trial court, in a carefully considered written opinion, reviewed the evidence and found that while the parties, or at least James, at the inception of their association may have intended to form a limited partnership, the conduct of the business over a period of some seven years was wholly inconsistent with such an intent.

The trial court found that a certificate of limited partnership, which the parties had signed in 1955 but did not immediately file, was insufficient evidence to overcome the great weight of other evidence tending to prove that the parties were in fact general partners. Since we agree with the trial court's findings on this issue, it is unnecessary to consider whether the formula

James proposed for distribution of assets would have been correct if the relationship had been found to be that of a limited partnership.

The testimony shows that the enterprise began when Robert came to James with a proposition to combine their assets to purchase a small trucking business that was for sale. The principal asset of the acquired business was an exclusive milk-hauling contract with the Lucerne division of Safeway Stores, Inc. This contract was destined to become a valuable asset of the newly formed enterprise.

At the beginning of the enterprise, Robert arranged the bank financing to acquire the original business. Robert later negotiated the purchase of real estate for the business. Robert at all times assumed with James equal liability when loans were taken out to purchase additional equipment. All such loans were repaid from the profits of the enterprise. The banker testified that he thought the firm was a general partnership.

Many administrative details of the business were handled by a bookkeeper who was hired by Robert. Robert also selected the accounting firm which prepared the partnership tax returns. The bookkeeper testified that his instructions came from Robert at least as much as from James. Robert and James equally drew checks on the firm's bank account, both for business purposes and for their own personal use. Both signed partnership notes. Robert merged his former trucking business into that of the partnership and after the first few years of the partnership's existence had no other employment or source of income.

During the last two years, Robert devoted more time to the actual running of the business than did James. It was conceded, however, that during the middle period of the business both partners had de-

voted equal time to its affairs. James negotiated the trucking contracts, hired the drivers, and dealt with the Public Utilities Commissioner. Robert and James both purchased equipment.

The partnership tax returns showed the partners sharing equally in profits, and showed both partners spending full time in the partnership business. The growth of the tangible assets of the business was accomplished by reinvesting earnings in new equipment. Their accountant testified that if the partners had told him that the firm was intended to be a limited partnership he would have made substantial changes in the capital accounts and other books of the firm to reflect such an agreement.

The business was profitable, and grew rapidly from a two-man operation in 1955 until, by the time of the trial, the partners had six full-time employees in addition to themselves. The firm operated a substantial fleet of truck-trailer combinations, and its growth generally paralleled an industry trend toward the bulk transportation of milk in tank trucks. Some growth came from the tax consequences of accelerated depreciation of equipment.

Records showed that both partners drew modest salaries. As a result, some profits which the business earned remained in the business and were used to purchase trucking equipment. Some of these profits would be reflected in the true value of the partnership assets if the assets were ever sold at a sale between willing buyers and sellers. Due to the accelerated depreciation rate used for tax and general accounting purposes, the "book value" of each partner's share is not necessarily the true value of the partners' interest in the firm. It is apparent, however, that the present litigation resulted when James elected to terminate the part-

nership and insisted that Robert accept "book value" for his interest.

■ James relies primarily upon two facts in seeking to reverse the trial court's decision. First, it is conceded that in all the banking and other business transactions of the enterprise, the name "Davis Company, Oreg. Ltd." was used. Although this name is some evidence of the type of association intended, it is not conclusive. A name, if it does not reflect the true facts, cannot be used to the prejudice of the rights of third parties. See, e.g., *Holzman v. de Escamilla,* 86 Cal App 2d 858, 195 P2d 833 (1948) ; Mechem, Elements of Partnership § 481 (2d ed 1920). Because of the successful operation of the business, the rights of creditors have never been a problem in this case. However, if creditors were seeking relief against both partners, the name of the business clearly would be no bar to a claim that the partners were in fact general partners, in the face of inconsistent representations or conduct by the parties. In a case of an intramural dispute between the partners themselves, we believe that an inconsistency between name of the enterprise and the method of doing business is even less significant than it would be if strangers were involved.

■ In addition to using a business name suggesting a limited partnership, the parties had, as noted, executed a certificate of limited partnership. The certificate was not filed with the county clerk as required by statute, however, and this failure to file tends to cast doubt on the effect the parties intended the certificate to have. Further, the certificate is merely a document required by statute for the effective formation of a limited partnership. Its purpose is to give notice to third parties dealing with the business. It does not

purport to embody the entire business arrangement between the parties. Therefore, it is not as persuasive as evidence of intent as a comprehensive agreement would be. There is nothing about the certificate itself that would indicate that either party thought, at the time the partners signed the certificate, that there was any difference between a limited partnership and a general partnership with reference to the distribution of assets on dissolution. Their oral testimony on the matter was vague and equivocal.

■ When the evidence shows that the parties for many years conducted the business in every respect as a general partnership, and at no time as a limited partnership, any inference created by the certificate is quickly overcome. *Meads v. Stott,* 193 Or 509, 238 P2d 256, 239 P2d 594 (1952); *Claude v. Claude,* 191 Or 308, 228 P2d 776, 230 P2d 211 (1951). Whatever may have been the intention of the parties when they started the enterprise, their conduct proved beyond doubt that the parties were general partners from and after 1957. The document did not have any meaning for the parties until James decided in 1963 to employ the written certificate for the first time, in an effort to force Robert out of the firm.

■ James claims that ORS 41.350(3), which makes the truth of recitals in written instruments conclusive presumptions between the parties thereto, precludes Robert from attempting to establish the existence of a general partnership. We may assume, as the trial court did, that the certificate was true in 1955. But ORS 41.350(3) has not precluded this court from allowing evidence in other cases to prove that a written contract has been modified either orally or through conduct. See, e.g., *Mathis v. Thunderbird Village, Inc.,*

236 Or 425, 438, 389 P2d 343 (1964); *Claude v. Claude,* supra. The statute does not prevent a court of equity from finding that, whatever the parties may have intended when they signed a document, their intent thereafter changed.

Affirmed.